[No. 25879. Department One. October 29, 1935.]

E. O. GABRIELSON, *Respondent,* v. R. C. SWINBURNE, *Appellant.*[1]

[1]Reported in 51 P. (2d) 368.

*Joseph H. Griffin,* for appellant.

*Allen & Wilkins* (*Edgar R. Rombauer,* of counsel), for respondent.

TOLMAN, J.—Respondent, as plaintiff, brought this action to recover damages caused by an alleged unlawful ejection from leased premises. The cause was tried to a jury, which returned a verdict against the defendant in the sum of nine thousand dollars. On a motion for a new trial, the verdict was reduced to five thousand dollars. The reduction was accepted by the plaintiff, and judgment was entered on the verdict as reduced. The defendant has appealed.

For an understanding of the questions to be determined, a brief statement of what the jury might, and probably did, believe the governing facts to be must be made.

A written lease, dated October 1, 1931, was entered into by the parties, by the terms of which the respondent became the tenant of a certain hotel building in the city of Seattle for a term of two years, with an option of renewal for a further two year period. No rent was to be paid for the first month. The rent for the second month and the first half of the third month was evidenced by a promissory note for $562.50, due one year after date, which was given and accepted. On December 15, 1931, under the terms of the lease, there would be due $187.50 rent for the last half of December, and on January 1, 1932, there would be due $375 as rental for the month of January. The rental for the remainder of the first year of the term was $375, payable monthly in advance. For the second year, the rental was $400 per month, likewise payable in advance, and if the option for an additional two years was exercised, the rental was to be

an amount agreed upon by the parties, or as might be fixed by arbitration if they could not agree.

The lease contains the usual provisions as to the premises being accepted as in good order, and provides that interior changes and additions may be made by the tenant at his own expense upon approval by the lessor.

After taking possession, the respondent found that the premises needed much more reconditioning than he had before supposed, and he also determined that it was wise to make changes which would fit the rooms for light housekeeping, which included the installation of electric or gas plates for cooking purposes in each room or suite. As respondent proceeded with these repairs and betterments, it soon became evident to him that to complete them properly would require the expenditure of money with which he had planned to pay the rental as it became due.

Before the first rent became due on December 15, 1931, he disclosed the situation to the appellant and was told, in effect, to go on and complete the contemplated repairs and betterments and not to worry about the accrued rent, which could be taken care of later. Various conversations were testified to, from which the jury had a right to believe that the landlord agreed, in consideration of the proposed repairs and betterments, to permit the accrued rent to be paid as the tenant felt able, provided that all arrearages were made up by March 1, 1932.

Respondent did continue and apparently completed the repairs and betterments, and also during the last half of December he paid in installments one hundred dollars on account of the rental which became due December 15.

On January 1, 1932, there was due as rental under the terms of the lease $87.50, the balance of the De-

cember rent, and $375 for the month of January. On January 4, 1932, without any previous request or warning, the appellant caused to be served upon the respondent a statutory demand to pay the rent then due within three days or to vacate the premises.

There is much testimony pro and con as to whether respondent voluntarily complied with this notice, but it appears that, finally, the respondent was forcibly removed from the premises by his wife and her two grown sons on January 7, 1932, and there is evidence warranting the jury in finding that the action of the wife and her sons was induced by considerations offered to Mrs. Gabrielson by the appellant's agent.

Many other facts, some bearing each way, were before the jury, and such as appear to be of importance will be mentioned as we proceed.

The first group of errors assigned relate to the reception of evidence. In support of those assignments, it seems to be argued that, since the lease acknowledged the premises to be in good order and provided that interior changes and additions might be made only at the expense of the lessee, evidence relating to repairs and betterments was inadmissible. This argument overlooks the fact that the lessee was not bound to improve the premises, even though permitted to do so. The landlord could not compel the tenant to better the condition of the premises over what it was when possession was given; and when informed that the tenant could and would so better the premises if given concessions in the time for payment of the rent, his gain by so obtaining improvements to his property was a sufficient consideration to make binding on him his agreement to extend the time for payment.

Nor was this an attempt to modify the terms of a written instrument by parol evidence in the sense

that is condemned by the authorities. No modification, it seems to us, was sought or intended, but only a waiver of strict performance, which, as we have said, was based upon a sufficient consideration. The oral agreement of waiver was not contemporaneous with the execution of the lease, and it was fully executed; and therefore the case of *Robinson v. Shell Oil Co.*, 172 Wash. 611, 21 P. (2d) 246, is not in point.

We have repeatedly held:

"While it is the rule that a written executory agreement to sell or purchase real estate cannot be rescinded or abrogated by an oral executory agreement to rescind or abrogate, it does not follow that such an agreement cannot be modified or abrogated by an executed oral agreement. On the contrary, it is recognized by our own cases above cited, and it is the rule of all the cases in so far as we are advised, that an executed oral contract to modify or abrogate a written contract, required by statute to be in writing, can be successfully pleaded as a defense to an action on the original contract. To hold otherwise is to make the statute of frauds an instrument of fraud; for it would be a fraud to allow a person to enforce a contract which he had agreed on sufficient consideration to modify or abrogate after he has accepted the consideration for its modification or abrogation." *Gerard-Fillio Co. v. McNair*, 68 Wash. 321, 123 Pac. 462.

*Oregon & Washington R. Co. v. Elliott Bay Mill & Lumber Co.*, 70 Wash. 148, 126 Pac. 406; *Stoner v. Fryett*, 91 Wash. 89, 157 Pac. 213; *Clements v. Cook*, 112 Wash. 217, 191 Pac. 874; *Conlan v. Spokane Hardware Co.*, 117 Wash. 378, 201 Pac. 26; *Kupka v. Sanders*, 136 Wash. 562, 240 Pac. 905; *Mott v. McDonald*, 147 Wash. 106, 265 Pac. 153. Many other of our cases recognize the rule.

If this be merely a waiver of strict performance and not a modification of the written lease, the appel-

lant has still less reason to complain.  25 R. C. L. 710, § 354, *et seq.*

■ Appellant complains that Mrs. Gabrielson was permitted to testify to matters indicating that she acted for the defendant, the appellant here, in forcibly removing her husband, the respondent, from the leased premises.  Too much was probably made of this incident, but any evidence showing or tending to show that the tenant did not voluntarily relinquish the premises was admissible.  The husband is the manager of the community property, and the wife cannot defeat his right to decide the question of relinquishment.  An examination of the record reveals no error in the admission of testimony on this subject.

With the facts as already indicated and having now determined that all of the evidence was properly admitted, we may say without further discussion that the errors assigned based upon the supposed insufficiency of the evidence to take the case to the jury, are not well taken.

■ Errors are assigned upon instructions given and refused.  The appellant requested an instruction which reads:

"You are instructed that if you believe from the evidence that Mr. Cole requested Mrs. Gabrielson, the wife of plaintiff, to take plaintiff out of said premises so as to prevent a scene, and that she did so under such circumstances, then I charge you that the defendant herein is not liable for any of the acts of plaintiff's wife, Mrs. Gabrielson."

This request was refused, and the court, on the subject involved, gave the following instruction:

"If you believe from the evidence that V. A. Cole did persuade or secure the wife of the plaintiff, Mrs. Gabrielson, to cause him to vacate the premises or that said V. A. Cole did promise or agree with her

that if she would cause the plaintiff to vacate or surrender the premises she would be paid or given a consideration, then I charge you that the defendant is bound by any and all acts done or committed by her or under her direction in causing the plaintiff to vacate and surrender said premises."

As we see it, a proper instruction on this subject would have been simply to tell the jury that they might consider all of such testimony in determining the question of whether or not the respondent voluntarily surrendered the premises or whether he was ejected. But, since appellant invited the court to pass upon his responsibility for Mrs. Gabrielson's actions, and since it appears without dispute that the V. A. Cole named in the instruction was appellant's agent in all of these matters, we can see no prejudicial error in refusing the requested instruction or in giving the instruction which was given.

Some testimony was introduced tending to show breaches of the lease other than the non-payment of rent, and the respondent requested and the court gave an instruction to the effect that, as to any such breaches, a ten day notice was required before a forfeiture. We see no error and no prejudice to the appellant in the instruction given.

■ Finally, error is assigned on the giving of the instruction which defines the measure of damages. The instruction given does not misstate the law, but is somewhat general in its terms. If the appellant desired a more specific instruction, it was his duty to prepare and present a request therefor.

Finding no prejudicial error, the judgment is affirmed.

STEINERT, GERAGHTY, and MITCHELL, JJ., concur.

BLAKE, J. (dissenting)—Assuming that plaintiff's wife and her two sons were agents of the landlord

when they led plaintiff off the premises, he is entitled to only nominal damages. Under the terms of the lease, he was in default in payment of rent and had failed to comply with a three day notice, given pursuant to Rem. Rev. Stat., § 814 [P. C. § 7972], to pay or quit the premises. The landlord was entitled to possession, for the alleged agreement to defer the payment of rent was not executed. In the very nature of the alleged agreement, it could not be executed until the deferred payment was made and accepted by the landlord.

"The general rule is that a contract which, under the law, is required to be in writing may not be modified by parol. It should be borne in mind that we have not here under consideration the right to modify by parol an original contract that was in fact reduced to writing but was not required to be so by law." *McInnis v. Watson,* 116 Wash. 680, 200 Pac. 578.

With respect to leases, this rule has been relaxed only in cases where the subsequent parol agreement has been *fully executed. Conlan v. Spokane Hardware Co.,* 117 Wash. 378, 201 Pac. 26. In that case, the court had under consideration a parol agreement on the part of the landlord to accept in full payment of rent a smaller sum than that stipulated in the lease. The landlord accepted checks, in the reduced amount, endorsed: "Rent in full to date." The landlord brought the action to recover the difference between the amounts so accepted and the rental stipulated in the lease. The court held that he was bound by the parol agreement, in so far as it had been fully executed. But the court said:

"It may be that, in this instance, since the contract of reduction was oral and since the term extended for a longer period than one year, either party could have repudiated its further operation so long as it

was executory. But after it became an executed contract by performance, neither party could repudiate it so as to thereby acquire additional rights under it."