**CREDIT ALLIANCE CORPORATION,**
Plaintiff,

v.

**DAVID O. CRUMP SAND & FILL CO.,**
**David O. Crump and Dennis Nuckols,**
**Defendants and Third-Party Plaintiffs,**

v.

**SEMCO SERVICES COMPANY, INC.**
**and Bubba Lee, Third-Party**
**Defendants.**

No. 78 Civ. 535 (CHT).

United States District Court,
S. D. New York.

April 23, 1979.

Sol D. Bromberg, New York City, for Credit Alliance Corp.

Lynton, Klein, Rosenberg, Opton & Handler, New York City, for David O. Crump Sand & Fill Co., David O. Crump and Dennis Nuckols; Herbert Feiler, Paul M. Godlin, New York City, of counsel.

## OPINION

TENNEY, District Judge.

In this diversity action, Credit Alliance Corporation ("Credit"), assignee of a contract for the sale of dump trucks, sues David O. Crump Sand & Fill Co. ("Sand & Fill"), buyer of those trucks, and David O. Crump and Dennis Nuckols, guarantors of the contract, for the difference between the amount due on the contract and the amount realized by Credit at a public sale of those trucks. In the defendants' answer, Sand & Fill counterclaimed against Credit for impeding the former's business. One day later, all three defendants joined in a third-party complaint against Semco Services Company, Inc. ("Semco"), seller of the trucks and assignor of the contract, and Bubba Lee, Semco's alleged president. Credit moves for summary judgment, and the defendants cross-move for transfer of venue. For the reasons given below, summary judgment is granted in favor of Credit, and the third-party action is transferred to the Southern District of Texas, Galveston Division.

### Background

The allegations in the parties' papers differ markedly, but the facts can be stated in broad outline as follows. On July 29, 1977 Semco and Sand & Fill entered a Conditional Sale Contract Note ("Contract") by which Semco sold Sand & Fill ten dump trucks. As part of the financing arrangement, Semco assigned the Contract on the same date to Credit; Sand & Fill executed a Delivery/Installation Certificate ("Delivery Certificate"); and Crump and Nuckols signed Guarantees of Sand & Fill's obligations to Credit. In the Delivery Certificate, Sand & Fill acknowledged complete and satisfactory delivery of the trucks; acknowledged notice of Semco's intention to sell the agreement to Credit; and waived any claims, defenses, or offsets against Credit in exchange for Credit's purchasing the Contract.[1] In the Guarantees that Crump and Nuckols executed, they agreed to direct, joint, and several liability and waived any claims, defenses or offsets.[2]

---

1. The Delivery Certificate, attached as Exh. A to Notice of Motion, provides in pertinent part: We hereby acknowledge complete and satisfactory delivery/installation of the property described in the agreement between us dated 7–29–77 and notice of your intention to sell such agreement and our note(s) to CREDIT ALLIANCE CORPORATION, New York, N.Y. In order to induce CREDIT ALLIANCE CORPORATION to purchase such agreement and note(s) we represent to it that the same are free from any defenses, offsets or counterclaims and we hereby waive any claim or offset as against CREDIT ALLIANCE CORPORATION and recognize its right to enforce such agreement and note(s) according to their terms free from any defenses, offsets or counterclaims.

   David O. Crump Sand & Fill Co.
   (Purchaser/Lessee/Mortgagor)

   By /s/ David O. Crump, President
   (Owner/Partner or Officer)

2. Each Guarantee, attached as Exh. B to Notice of Motion, provides in pertinent part:

Credit subsequently wrote Sand & Fill requesting the latter to file within thirty days a statement indicating any complaints, objections, claims, or defenses to the goods covered by the Contract. Credit did not receive a reply.

Sand & Fill subsequently defaulted on the payments due under the Contract. It alleges that it returned the trucks; Credit alleges that it repossessed them from Sand & Fill. Credit thereafter advertised a sale of the trucks, sent notice to the defendants, which the defendants alleged they did not receive prior to the sale, and held the sale, at which it put in the highest bid. It subsequently commenced this action for an alleged deficiency of $135,088.57.

In opposing Credit's motion for summary judgment, the defendants reiterate and rely on their eight affirmative defenses. The first and second defenses address venue. In the third defense, defendants contend that they did not waive their claims and defenses, that the trucks were defective and otherwise not in compliance with the Contract, that Credit had knowledge of these claims and defenses, and that it cannot argue otherwise because the Delivery Certificate was signed before the trucks were delivered. In its fourth defense, the defendants allege that they returned the trucks to Credit, with Credit's agreement, in full satisfaction of the Contract. Fifth and Sixth, they argue that the Contract is unenforceable because it allegedly violates the usury laws of New York and Texas. Seventh, they contend that the sale of the trucks was not commercially reasonable within the meaning of the Uniform Commercial Code and that they are therefore relieved of their obligations to pay. And, finally, they counterclaim for failure to deliver trucks in good and serviceable condition.

Credit contends that the case presents only three issues: waiver, usury, and the commercial reasonableness of the public sale. It argues that the defendants waived their claims and defenses in the Certificate of Delivery, in the Guarantees, and by Sand & Fill's failure to respond to Credit's request for a statement of claims and defenses; that the defense of usury is unavailable in either New York or Texas because of the "time-price doctrine"; and that the sale was commercially reasonable because Credit gave proper notice to the defendants and because the sale was properly advertised and conducted. In responding to the defendants' allegations, Credit denies knowledge of defects in the trucks and argues that any statement by Semco to the effect that Credit had such knowledge cannot bind Credit because Semco is not Credit's agent. As to any alleged discharge of the defendants' obligations under the Contract, Credit argues that the Contract could be modified only by written agreement and that no such modification was executed.

### Discussion

*Waiver*

■ N.Y.U.C.C. § 9–206(1) (McKinney's 1964) provides in pertinent part:

[A]n agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the Article on Commercial Paper (Article 3).

In this case, Sand & Fill, by Crump signing as "President," executed a Delivery Certifi-

[T]o induce you to purchase and/or accept one or more assignments . . . we . . agree to be, without deduction by reason of set-off, defense or counterclaim of [Sand & Fill], jointly, severally and directly liable to you for the due performance of all such Security Obligations . . . . The liability hereunder of each of the undersigned is direct and unconditional and may be enforced without requiring you first to resort to any other right, remedy or security and shall survive any repossession of property whether or not such constitutes an election of remedies against Subject: nothing shall discharge or satisfy our liability hereunder except the full performance and payment of all Security Obligations with interest.

cate, by which it waived any claims, defenses, or offsets against Credit. *See* note 1 *supra.* Defendants Crump and Nuckols executed similar waivers in individual Guarantees. *See* note 2 *supra.* Defendants contend that, in spite of the Delivery Certificate, Sand & Fill never made such a waiver. They offer in support of their position the fact that Semco struck the waiver language from the Contract, attached as Exh. A to Credit's Complaint. It is unclear why the waiver language was struck from the Contract, on the one hand, while, on the other, Crump signed the Delivery Certificate containing a waiver in clear and certain terms. The Court need not speculate: this appearance of conflict is not of a type to render the waiver uncertain or in any sense ambiguous. The terms of the waiver, as expressed and assented to in the Delivery Certificate, are clear, simple, and susceptible of only one meaning: Sand & Fill waived any claims, defenses, and offsets against Credit.[3]

■ Defendants also argue that Credit may not rely on section 9–206(1) because Credit allegedly took the assignment before delivery of the trucks and with notice of defenses, namely that the trucks were allegedly defective and otherwise not in compliance with the Contract. These allegations, however, fly directly in the face of Sand & Fill's unequivocal acknowledgement of complete and satisfactory delivery of the trucks. *See* note 1 *supra.* The specific allegations concerning noncompliance and defects support the conclusion that Semco and its president, Bubba Lee, had notice of them, *see* Affidavit of David O. Crump, sworn to July 24, 1978, at 5–7 ("Crump Affidavit"), but are not probative of Credit's knowledge. That Bubba Lee, who was trying to sell the trucks, allegedly indicated that Credit knew that the trucks had the wrong size buckets, *see id.* at 7, fails, in the absence of an agency between Credit and Semco and in the face of the defendants'

acknowledgment of complete and satisfactory delivery of the trucks, to raise a genuine issue of material fact as to Credit's alleged knowledge of defenses. Finally, even if Credit took the assignment before the trucks were actually delivered, the waiver would still be effective. *Credit Alliance Corp. v. Successful Creations, Inc.,* No. 7295/78 (Sup.Ct.N.Y. July 11, 1978).

Other reasons support upholding the waiver in the instant action. It cannot be said that these defendants are unwary victims of a merchant's sharp practices. They are business people dealing in their own area of business. The transaction was aboveboard—the defendants knew that the Contract was going to be assigned to Credit, and the language of assignment and waiver was explicit and clear. They must be assumed to have understood the consequences of their acts, and the Court can only conclude that they read and understood the provisions in the Contract, Delivery Certificate, and Guarantees. *Accord, B. W. Acceptance Corp. v. Richmond,* 46 Misc.2d 447, 259 N.Y.S.2d 965 (Sup.Ct.1965).

### Discharge

■ Defendants also contend that Credit accepted the return of the trucks in full satisfaction and discharge of their obligations under the Contract. They allege that Paul Sinsheimer, Credit's local manager, told the defendants to return the trucks to Semco and that after such delivery Credit would make no further claim against them. Mr. Sinsheimer flatly denies this allegation. Affidavit of Paul Sinsheimer, sworn to Aug. 7, 1978, ¶ 12 ("Sinsheimer Affidavit"). The writings in this case spare the Court the need to determine whether defendants' allegation is true: the Contract provides that "[t]his contract note contains the entire agreement of the parties and may not be modified except in writing," Exh. A to Summons and Complaint, and the Guarantees specify that they "cannot be changed

---

**3.** In August, Credit sent Sand & Fill a letter in which, *inter alia,* it requested a statement of any claims or defenses to the Contract. Exh. C to Credit's Notice of Motion. Sand & Fill did not reply. Because the effects of the letter and failure to reply are ambiguous and because neither the sending of the letter nor the absence of a response can alter the Court's conclusions, the Court does not rely on either circumstance.

orally," *id.,* Exhs. B1 & B2. Because the alleged discharge and satisfaction was not in writing and because Credit has indicated no intention to waive this writing requirement, defendants' allegation cannot discharge its obligations to Credit. *Accord, Leasing Service Corporation v. Brown Ridge Coal, Inc.,* No. 77 Civ. 2592 (VLB) (S.D.N.Y. June 29, 1978).

*Usury*

▉ Defendants also contend that the Contract is unenforceable because it allegedly violates the usury statutes of New York and Texas. The defense of usury, however, is unavailable in New York to corporate defendants. N.Y.Gen.Oblig.Law § 5–521 (McKinney's 1978). Defendants allege, however, that Sand & Fill, concededly a corporate defendant, was in fact a partnership because it never functioned as a corporation, but rather as a partnership between the two individual defendants. However, the Court need not determine whether this claim has merit because the Contract is not usurious under either New York or Texas law. Both states exempt credit sales from the usury statutes under the "time-price doctrine," under which a higher price may be charged for a credit sale than would have been charged for a cash sale. In New York, such credit sales are not "loans" or "forebearances" within the meaning of the usury statutes, *e. g., Aglio v. Carousel, Inc.,* 34 Misc.2d 79, 228 N.Y.S.2d 350 (Sup.Ct.1962); *Matos v. Certified Store Equipment Corp.,* 132 N.Y.S.2d 854 (Sup.Ct.1954); *Thomas v. Knickerbocker Operating Co.,* 202 Misc. 286, 108 N.Y.S.2d 234 (Sup.Ct.1951); in Texas, they are excluded from the statutory definition of "interest," Tex.Rev.Civ.Stat.Ann. art. 5069–1.01(a); *see, e. g., Lamb v. Ed Maher, Inc.,* 368 S.W.2d 255 (Tex.Civ.App.1963). Here, the Contract specified that it was a "Conditional Sale Contract Note," and the document set out clearly on its face the "Cash Sale Price," the "Time Sales Price," and the "Finance Charge (Time Price Differential)." Exhibit A to Summons and Complaint. The defendants' citation of *National Equipment Rental, Ltd. v. Hendrix,* 565 F.2d 255 (2d Cir. 1977), does not avail it. There, the Second Circuit found ample evidence to support a jury finding that the transaction between the parties—essentially a refinancing of equipment already owned by Hendrix—was a loan and not a lease, as designated. Beyond doubt, the instant transaction was a sale.[4]

*Resale of the Trucks*

▉ Credit's resale of the trucks after Sand & Fill's default is governed by N.Y.U.C.C. § 9–504, subsection (3), which provides in pertinent part:

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. . . . [R]easonable notification of the time and place of any public sale . . . shall be sent by the secured party to the debtor, if he has not signed after default a statement renounc-

---

4. Defendants contend that their failure to make the $30,000 down payment specified in the Contract renders the transaction "essentially" a loan. Memorandum at 15. The Court does not understand how the defendants' failure to meet the terms of the Contract so transforms it. Any forebearance by Credit of the down payment does not render the time-price differential set out in the Contract usurious or otherwise invalid, and the defendants do not contend that the entire time-price differential constituted interest on the alleged forebearance of the down payment.

The defendants also make allegations concerning the course by which the trucks became available for sale to them. Again they fail to argue in clear terms the meaning of the various allegations and merely state in conclusory form that "the entire transaction was bathed in fraud from the start." Crump Affidavit at 12. The defendants have failed to raise a genuine issue of material fact regarding an alleged fraud by Credit; however, the Court reaches no conclusion regarding the defendants' allegations against Bubba Lee and Semco. Claims against these third-party defendants should be resolved in the third-party action.

ing or modifying his right to notification of sale. . . . The secured party may buy at any public sale . . . . .

The defendants contend that the sale was not conducted in a commercially reasonable manner; in fact, however, most of their contentions are directed to the lack of detail regarding the sale that Credit had provided in its moving papers. More particularly, they alleged that they were not given notice of the sale as required by section 9–504(3). On the matter of notice to the defendants, Credit responds in essence that it adequately informed each defendant of the impending sale and that, even if Sand & Fill and Crump did not receive actual knowledge of the sale through the mails, they had actual or constructive knowledge from Nuckols.

The secured creditor has the burden of proving that due notice of sale was provided and that the sale was commercially reasonable. *Security Trust Co. v. Thomas,* 59 A.D.2d 242, 399 N.Y.S.2d 511 (4th Dep't 1977). The reasonable notice provision requires only actual or constructive receipt of notice. *Chase Manhattan Bank, N. A. v. Natarelli,* 93 Misc.2d 78, 90–91, 401 N.Y.S.2d 404, 412 (Sup.Ct.1977). Here, Credit sent notice of the sale by certified mail to each defendant and to each third-party defendant. Exhs. 1–5, attached to Sinsheimer Affidavit.[5] Receipts returned by Nuckols, Semco, and Lee indicated delivery on November 17, 1977, 12 days prior to the sale. *Id.* Exh. 6. The letter to Crump was delivered to his address on November 25—several days later than the other notice letters,

for unexplained reasons—but Crump did not accept the letter until its third delivery on December 1, two days after the sale. The notice to Sand & Fill, sent to an address other than the one given in the Contract, was returned marked "no such number." *Id.* Exh. 9. Given the defendants' own contention that "the corporate defendant never functioned as a corporation, but functioned as a partnership between myself and Mr. Nuckols," Crump Affidavit at 4; that Credit attempted delivery on Crump; and that Nuckols received actual notice of the sale twelve days before it was held, the Court can only conclude that all three defendants, directly or by imputation, had adequate notice. *See Gateway National Bank v. Saxe, Bacon & Bolan,* 40 A.D.2d 653, 336 N.Y.S.2d 668 (1st Dep't 1972); *Chase Manhattan Bank, N. A. v. Natarelli, supra,* 93 Misc. at 90–92, 401 N.Y.S.2d at 412–13; N.Y.U.C.C. § 1–201(25)–(28).

A similar conclusion is warranted on the advertising and sale of the trucks. On November 25 through 28, 1977, immediately prior to the public sale of the trucks, Credit advertised the sale in three newspapers: the Houston Chronicle, the Houston Chronicle for Texas City, and the Houston Post. Exhs. 10–14, attached to Sinsheimer Affidavit. These advertisements consisted of the first three paragraphs of the letters sent to the defendants. *See* note 5 *supra.* They give the time and place of sale, describe the trucks, and provide the terms of payment. At the sale, Credit, or its affiliate, C–A Credit Corp., bid in the equipment on a bulk bid of $80,000.00.[6] In short, Credit has met

---

**5.** Each letter provided:

PLEASE TAKE NOTICE that pursuant to the terms of a Conditional Sale Contract Note executed by David O. Crump Sand & Fill Co. (hereinafter called "Buyer") dated July 29, 1977, the undersigned holder of the aforesaid Conditional Sale Contract Note and the indebtedness represented thereby, will sell at the premises of Semco Services Company, Inc., 921 E. Broadway, Pasadena, Texas on the 29th day of November, 1977, at 10 o'clock in the forenoon right, title and interest of the undersigned in the following described property:

Four (4) 1970 White COE Trucks and Six (6) 1969 White COE Trucks each with Galion dump bed

The seller requires at the time of the auction a minimum down payment of 25% of the accepted bid in either cash, certified or cashier's check with the balance due within 24 hours thereafter.

The undersigned reserves the right to bid at sale.

Exhs. 1–5, attached to Sinsheimer Affidavit.

**6.** The defendants allege that Semco, and not Credit, purchased the trucks at the foreclosure sale. Crump Affidavit at 9. The Court need not resolve this question: both were entitled to

its burden of establishing adequate notice to the defendants and the commercial reasonableness of the advertising and sale. Defendants have failed to raise a genuine issue of material fact as to any of these issues.

*Venue*

 In the Contract, attached as Exhibit A to Summons and Complaint, the parties "agree[d] to the venue and jurisdiction of any court in the State and County of New York regarding any matter arising hereunder." The defendants object to the venue provision as unconscionable—alleging that the provision was not brought to their attention and that they were unaware of it—and move for a transfer of venue pursuant to 28 U.S.C. § 1404(a).

Such contractual provisions are not on their faces unconscionable. *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); cf. *National Equipment Rental v. Szukhent,* 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) (upholding the contractual appointment of an agent for accepting service of process). Reiterating the waiver discussion, *supra,* this Court is unwilling to conclude that these business people could not read and understand this simple and unambiguous contractual language. A fortiori, it concludes that venue was properly laid in New York.[7] However, having decided to grant summary judgment in favor of Credit, the Court finds no reason for the third-party action, which is exclusively between Texas parties and which concerns transactions in Texas, to continue in this Court, once judgment is entered in the action by Credit against the defendants. Therefore, the motion addressed to venue will be granted as to that action.

*Conclusion*

The Court concludes that Sand & Fill, Crump, and Nuckols waived any claims, de- fenses, or offsets against Credit, that they have not discharged their obligations to Credit, and that the Contract for the sale of the trucks is not usurious. It further concludes that Credit gave the defendants adequate notice of the foreclosure sale, that the sale was commercially reasonable, and that venue was properly laid in this Court. Accordingly, summary judgment is granted in favor of Credit, and the defendants' counterclaims against Credit is dismissed.

Finally, the Court directs that after judgment is entered in the main action by Credit against Sand & Fill, Crump, and Nuckols, the third-party action be transferred to the Southern District of Texas, Galveston Division.

Submit judgment in main action on notice.

So ordered.

---

bid on the trucks, and the outcome of the bidding does not affect this motion.

**7.** The Court does not decide whether, after weighing the interests in this case, it would

have transferred the entire action to Texas had it not decided to grant summary judgment in the main action.