**CREDIT ALLIANCE CORP., Plaintiff,**

v.

**CORNELIUS & RUSH COAL CO., INC.; Howard Cornelius and Christopher C. Rush, Defendants and Third Party Plaintiffs,**

v.

**SOUTHEASTERN DRILLING AND BLASTING COMPANY, INC., Third Party Defendant.**

No. 77 M–1109.

United States District Court, N. D. Alabama, W. D.

Nov. 19, 1980.

Jerry W. Powell, Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, Ala., for plaintiff.

Ralph Smith, Jr., Starnes, Smith & Wilkes, Guntersville, Ala., Thomas B. Huie, Huie, Fernambucq, Stewart & Smith, Terry Bullard, Birmingham, Ala., for defendants and third party plaintiffs.

## MEMORANDUM OPINION

McFADDEN, District Judge.

This cause is before the court on plaintiff's motion for summary judgment. Plaintiff, the assignee of a contract for the sale of a pneumatic drill, seeks to recover the deficiency due after the repossession and public sale of the drill. Cornelius & Rush Coal Company, Inc., the buyer of the drill, and Howard Cornelius and Christopher C. Rush were guarantors of the contract. Defendants claim the drill was defective, relieving them of any obligation to pay the amount due and counterclaim against Credit, Southeastern Drilling & Mining Company, Inc. and its President, H. R. Cook, for breach of warranty and conspiracy to sell a defective drill. Defendants further claim that the sale of the drill was not commercially reasonable thereby relieving them of any responsibility for the deficiency.

Having carefully considered the pleadings, answers to interrogatories, documents produced by plaintiff and defendants, defendants' responses to requests for admission, the deposition of defendant Howard Cornelius, affidavits of the defendants, the briefs and oral argument of counsel, the court is of the opinion that no genuine issue as to any material fact is presented in this cause, and the plaintiff is entitled to summary judgment on its claim and on the counterclaim of defendants.

## FACTUAL BACKGROUND

Credit, a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New York, New York, is qualified to do business in Alabama.

Cornelius & Rush is an Alabama corporation with its principal place of business in Cleveland, Alabama. Howard Cornelius and Christopher C. Rush are resident citizens of the State of Alabama.

The court has subject matter jurisdiction under 28 U.S.C. § 1332 and personal jurisdiction of the parties. Venue is proper.

In early 1975 Southeastern was the owner of one used Chicago pneumatic drill model 670, S/N 87279; mounted on a 1972 International Truck, S/N 377121. On approximately March 4, 1975, the drill was delivered to Cornelius & Rush for inspection and testing in its coal strip mine pit. On March 12, 1975 Southeastern executed a bill of sale to Cornelius & Rush for the drill citing a consideration of $135,000.

On March 31, 1979, Southeastern, as seller, and Cornelius & Rush, as buyer, entered into a Conditional Sale & Contract Note for the sale of the drill for a stated cash price of $100,000. A cash downpayment of $10,000 was made and the unpaid balance of $90,000 was financed over a period of 24 months. The finance charge was $12,104. Each monthly installment was $4,266. (The $280 discrepancy is caused by additional closing costs.) Howard Cornelius and Christopher C. Rush each personally guaranteed "the full and complete payment and performance of the above Conditional Sales Contract Note in accordance with the terms thereof."

The terms and conditions of the security agreement provided in pertinent part:

Buyer acknowledges that no warranties, representations or agreements not expressed herein have been made by Holder. Buyer further acknowledges notice of seller's intended assignment/endorsement, buyer agrees not to assert against any assignee/endorsee hereof any defense, setoff, recoupment claim or coun-

terclaim which buyer may have against seller, whether arising hereunder or otherwise.

This contract note contains the entire agreement of the parties and may not be modified except in writing.

The face of the agreement contained the following in bold type:

NOTICE TO RETAIL BUYER: (1) Do not sign this contract note before you read it or if it contains any blank spaces. (2) You are entitled to an exact copy of the contract note you sign at the time you sign. Keep it to protect your legal rights. (3) You have the right to pay in advance the full amount due and under certain conditions to obtain a partial refund of the time price differential. No other agreement, oral or written, express or implied has been made by either party.

On March 31, 1975, the security agreement was assigned to Credit by Southeastern without recourse upon payment by Credit of $90,000 by joint check to Southeastern and Alabanc Financial Corporation, the lienholder on the drill. Cornelius & Rush executed a Delivery/Installation Certificate which acknowledged complete and satisfactory delivery of the drill, noticed Southeastern's intent to sell the Security Agreement to Credit, represented that the Security Agreement was free from all defenses, offsets or counterclaims and waived any claim or offset against Credit.

Credit's letter of April 21, 1975, to Cornelius & Rush enclosed a coupon book and an additional copy of the contract and stated:

The contract includes a description of the transaction itself and the collateral which is security for payment of your indebtedness. Our purchase of the contract is based upon your representation that you shall not assert against us any defense, setoff, claim or counterclaim arising under the contract or otherwise, all of which you waived as to us and your acknowledgment that the equipment has been completely and satisfactorily delivered/installed at the location shown on the contract. Please (1) examine carefully all of this information, (2) sign the duplicate copy of this letter if it is correct or note any discrepancies on it, and (3) return the duplicate copy to us in the enclosed envelope.

The duplicate copy was not returned.

Cornelius & Rush made two installment payments and defaulted. On August 7, 1975, Cornelius & Rush and Howard Cornelius executed an extension agreement modifying the repayment terms. At the same time, a third installment payment of $4,266.00 was made.

The extension agreement stated:

In order to induce you to agree to the foregoing extension, and in consideration of your so doing, the undersigned warrants that the above indebtedness is a valid, binding and existing obligation of the undersigned, due and payable without any defense, counterclaim or offset whatsoever, and the undersigned promises to pay said indebtedness to your order according to the terms set forth above, at your offices or such other place of payment you may designate, and in the event of a default in the payment of any installment or interest when due, the entire unpaid balance shall at your option immediately become due and payable and you may enforce your rights and options under the Lien Instrument and/or Notes as if this extension had not been granted.

Between October 1, 1975 and May 1, 1976, defendants made six payments under the August 7, 1975, extension agreement. In November of 1975, the drill was leased by Cornelius & Rush to Rosa Minerals, Inc. In May of 1976, Cornelius & Rush defaulted on the August 7, 1975 extension agreement. Thereafter all three defendants entered into a second extension agreement with Credit dated September 10, 1976, which again modified the repayment schedule. This second extension agreement contained a waiver of defenses, and counterclaims identical to the waiver contained in the August 7, 1975 extension agreement.

On October 27, 1976, Credit declared defendants in default for failure to make the payment due on October 1, 1976. Defendants then owed Credit $65,783.16. Credit

peacefully repossessed the drill, and scheduled a public sale to be held on January 25, 1977 at the premises of Simmons Machinery Company, Inc., U. S. 78 West, Graysville, Alabama.

Cornelius & Rush, Howard Cornelius and Christopher Rush were each notified of the scheduled public sale by certified mail dated January 11, 1977. The public sale was advertised in *The Birmingham News* on Friday, January 21, 1977, and Sunday, January 23, 1977, and in the *Southern Democrat* on Thursday, January 20, 1977. Credit also sent notice of the public sale to the following potential buyers: Shelton Industries, Inc.; Wynsol Collier; B&B Coal Co., Inc.; and Lakeside Coal Co., Inc.

The defendants were not present at the public sale on January 25, 1977, when the drill was sold to the highest bidder for $25,000. After deducting the expenses of sale, $413.28, the sum of $24,586.72 was credited to the balance due under the contract, $68,595.03, leaving a balance due of $44,008.31.

Credit notified defendants by letter dated February 8, 1977, of the remaining balance. No part of the claimed deficiency has been paid. Interest at the highest lawful contract rate from the date of sale to the date of judgment is $24,935.09, and the contractual attorneys fee payable by the defendants is $6,601.25.

## ISSUES PRESENTED

1. Whether defendants have waived any claim or defense they might have against Credit.
2. Whether the terms of the public sale of the drill were commercially reasonable.
3. Whether an oral warranty concerning future repairs and down time is enforceable in this transaction.

## DISCUSSION

### I. WAIVER

*Alabama Code* 1975, § 7–9–206(1) provides in pertinent part as follows:

[A]n agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the article on commercial paper (article 3). A buyer who as part of one transaction signs both a negotiable instrument and a security agreement makes such an agreement.

Cornelius & Rush, Howard Cornelius and Christopher Rush executed four separate documents, on three different occasions, waiving all claims, defenses, or offsets against Credit. These documents were (1) the Conditional Sale Contract Note, dated March 31, 1975, executed by Howard Cornelius as president of Cornelius & Rush, and by Howard Cornelius and Christopher Rush as guarantors; (2) the Delivery Certificate executed by Howard Cornelius as president of Cornelius & Rush; (3) the August 7, 1975 extension agreement executed by Howard Cornelius as president of Cornelius & Rush and by Howard Cornelius individually; and (4) the September 10, 1976 extension agreement executed by Howard Cornelius as president of Cornelius & Rush, and Howard Cornelius and Christopher Rush individually.

■ The defendants contend that the March 31, 1975 security agreement is of no legal effect for lack of consideration, on the ground that the earlier dated bill of sale was the controlling document. Defendants admit purchasing the drill on March 31 by executing the security agreement, and borrowing $90,000 from Credit to do so. The extension of credit in that amount represents adequate consideration for the contract.

■ Defendants also contend that there is an issue of fact with respect to Credit's status as a holder in due course. It is without dispute that Credit paid Southeastern $90,000 for the Cornelius & Rush contract, requested the execution of a delivery certificate as proof of satisfactory delivery,

specifically requested information concerning claims and defenses in its letter of April 21, 1975 to defendants, and made it clear in all of its documentation that it was relying upon the defendants' representation that they would not assert any claim or defense against it. Plaintiff is therefore entitled to the protection of § 7–9–206(1) of the Alabama Code (1975).

The defendants made eleven installment payments on the contract between April 1975 and September 1976, leased the equipment to Rosa Minerals, Inc., in November of 1975, and executed two extension agreements. This is inconsistent with their present position that plaintiff through an unidentified agent warranted the equipment at the time the March 31 documents were executed.

In a similar case, *Credit Alliance Corp. v. David O. Crump Sand & Fill Co.*, 470 F.Supp. 489 (S.D.N.Y.1979), the defendants argued, as do the defendants here, that the waiver of defenses contained in an identical Certificate of Delivery was without effect because Credit Alliance took the assignment with notice of defenses. There the court observed that this allegation flew directly in the face of an unequivocal acknowledgment of complete and satisfactory delivery of the trucks. The court found that the terms of the waiver contained in the delivery certificate were "clear, simple and susceptible of only one meaning: Sand & Fill waived any claims, defenses and offsets against Credit." *Id.*, at p. 492. Unlike the *Crump* case, these defendants executed four separate waivers after taking possession of the drill.

There is no genuine issue of material fact presented with respect to the issue of waiver of defenses and claims and Credit is entitled to a judgment as a matter of law.

## II. COMMERCIALLY REASONABLE SALE

The defendants argue that the commercial reasonableness of plaintiff's resale of the drill is a disputed issue of fact and cite the testimony of Howard Cornelius at page 86 of his deposition. Mr. Cornelius testified as follows:

Q. You have no dispute with the arithmetic used by Credit Alliance Corporation in arriving at the amount of the claim, is that true?

A. Only question I have is how come the drill didn't bring no more money.

Q. Would you have expected the drill to bring more than $25,000?

A. Yes, I would.

Q. In the condition as you portrayed?

A. Sure. It should have brought fifty, and then somebody buys it and spends fifty and they'd have a good rig.

Section 7–9–507(2) of the Alabama Code (1975), provides in pertinent part:

(2) The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner.

Official comment 2 under this section provides that:

none of the specific methods of disposition set forth in subsection (2) is to be regarded as either required or exclusive, provided only that the disposition made or about to be made by the secured party is commercially reasonable.

The defendants have admitted all of the facts with respect to Credit's disposition of the collateral by a public sale. The issue of commercial reasonableness is therefore a question of law. *See Credit Alliance Corporation v. David O. Crump Sand & Fill Co.*, 470 F.Supp. 489 (S.D.N.Y.1979); *Allied Equipment, Inc. v. Pee*, 284 So.2d 528 (Miss. 1973).

Section 7–9–504(3) of the Alabama Code (1975) requires reasonable notification to the debtor of the time and place of any public sale. Reasonable notification

is not defined in the Code. The purpose of notice to the debtor is to enable the debtor to protect his interest in property by paying the debt, finding a buyer, being present at the sale to bid on the property or have others do so. *Wells v. Central Bank of Alabama*, 347 So.2d 114 (Ala.App.1977); *Geohagan v. Commercial Credit Corp.*, 130 Ga.App. 828, 204 S.E.2d 784 (1974). Notice was sent to the debtor and the guarantors by certified mail dated January 11, 1977, two weeks prior to the scheduled date of sale. Under the circumstances fourteen days notice is reasonable as a matter of law. *See Associate Discount Corp. v. Forcier*, 5 UCC Rep.Serv. 294 (N.Y.Sup.Ct.1968); *Hudspeth Motors, Inc. v. Wilkinson*, 238 Ark. 410, 382 S.W.2d 191 (1964); *Motor Contract Co. v. Sawyer*, 123 Ga.App. 207, 108 S.E.2d 282 (1971).

The fact that the public sale did not bring what Mr. Cornelius would have expected is not sufficient to establish that the sale was not made in a commercially reasonable manner. *Alabama Code 1975*, § 7–9–507(2); *In re Zsa Zsa, Ltd.*, 352 F.Supp. 665 (S.D.N.Y.1972) ("The language of § 7–9–507 reveals that the primary focus of commercial reasonableness is not the *proceeds* received from the sale but rather the *procedures* employed for the sale"). There is no genuine issue of material fact and the sale was conducted in commercially reasonable manner.

### III. THE COUNTERCLAIM—ORAL WARRANTIES

Defendants by counterclaim seek damages for breach of an alleged oral warranty which adds material terms to the contract and specifically violates its provisions.

The contract provided that it contains the entire agreement of the parties and that no other agreement, oral or written, express or implied, has been made by either party. The defendants do not contend that the plaintiff has waived these provisions in any respect.

In *Loegler v. C. V. Hill & Co.*, 288 Ala. 606, 193 So. 120 (1940), the plaintiff sought recovery of damages for the breach of an oral warranty. The defendant had allegedly warranted the satisfactory operation of a refrigeration unit for a period of eighteen months. The Supreme Court of Alabama held that

the warranty here relied on was verbal if made at all. And it was in connection with a sale transaction evidenced by a written instrument executed by both parties which they designated a conditional sales contract. Such verbal warranty has the effect of adding a material term to the contract, and is in violation of its express provisions. It cannot therefore be given effect as a feature of the transaction.

*Id.*, at 122. While this is a pre-code case, the adoption of the Uniform Commercial Code has not changed the law of contract as it existed prior to 1967. See *Port City Construction Co. v. Henderson*, 48 Ala.App. 639, 266 So.2d 896 (1972); *Alabama Code 1975*, §§ 7–2–316(1) and 7–2–202. Therefore, this alleged repair and down time warranty can have no legal effect in this transaction and plaintiff is entitled to a summary judgment with respect to the defendants' counterclaim.