**LEASING SERVICE CORPORATION, Plaintiff,**

v.

**Charles YAWN and Lynda A. Yawn, Defendants.**

No. 85 Civ. 566 (WCC).

United States District Court, S.D. New York.

Oct. 26, 1988.

Sol D. Bromberg, New York City, for plaintiff.

Charles Yawn and Lynda A. Yawn, Loughman, Fla., pro se.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

### BACKGROUND

In this diversity action, plaintiff Leasing Service Corporation ("LSC") seeks to recover the balances due on two equipment leases made to United Services, Inc. ("United Services") which were guaranteed by defendants Charles and Lynda Yawn. LSC was assigned the leases by American Bankers Leasing, Inc. ("ABL"). Defendants, in answering the original complaint by letter, did not challenge its allegations. Subsequently, defendants failed to answer or move with respect to LSC's amended complaint. As a result of defendants' inaction, this Court entered a default judgment against defendants and authorized Magistrate Gershon to determine damages by conducting an inquest.

After holding a hearing in which defendants did not participate despite being notified, Magistrate Gershon determined that LSC was entitled to damages totalling $341,583.[1] In arriving at this figure, the Magistrate determined that a sum of $60,000 withheld by LSC from the purchase price it paid to ABL for the second lease's assignment (as a reserve to protect against a default by lessee United Services) provided no basis for reducing defendants' indebtedness to LSC. However, the Magistrate did subtract from defendants' indebtedness the sum received by LSC from the sale of the equipment at an auction which she found to be a valid arm's length transaction. The Magistrate also denied LSC's claim for recovery of sales and use taxes and personal property taxes from defendant. Finally, LSC's request for interest on the balance due from the date of the auction to the date of the inquest was denied.

Following receipt of the Magistrate's Report and Recommendation ("Report"), defendants timely objected to her findings by letter. Specifically, defendants assert both that they are not liable to LSC and that they owe LSC $147,380.70 instead of $341,583. After a thorough *de novo* review of Magistrate Gershon's Report, defendants' objections are held meritless and the Magistrate's disposition is affirmed in its entirety.

### DISCUSSION

Rule 72(b), Fed.R.Civ.P., instructs a district court judge to "make a de novo determination ... of any portion of the magistrate's disposition to which specific written objection has been made." *See also* 28 U.S.C. § 636(b)(1); *Mokone v. Kelly*, 680 F.Supp. 679 (S.D.N.Y.1988); *Nelson v. Smith*, 618 F.Supp. 1186 (S.D.N.Y.1985). After conducting its review, the court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). The rule also permits the court to accept any portion of a magistrate's disposition to which no objection has been made as long as it is not "erroneous on the face of the record." Fed.R.Civ.P. 72, Notes of Advisory Committee on Rules (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir.), *cert. denied*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed. 2d 119 (1974)).

■ A *de novo* determination does not require a second evidentiary hearing. Fed. R.Civ.P. 72, Notes of Advisory Committee on Rules (citing *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 2412–13, 65 L.Ed.2d 424 (1980)). The judge's review

---

**1.** Magistrate Gershon found that LSC was entitled to recover $162,873 for the first lease and $178,710 for the second lease.

may be based solely upon the record. Fed. R.Civ.P. 72(b). In making its *de novo* determination, this Court has reviewed Magistrate Gershon's Report, the transcript of the hearing conducted by the Magistrate, the exhibits presented at the hearing, and defendants' objection to the Report.

■ Defendants offer two objections to Magistrate Gershon's Report. Both are groundless. First, defendants argue that they are not liable. I need not consider this objection because Magistrate Gershon's Report addressed only the issue of damages. Defendants' liability was previously established when their inaction led this Court to enter a default judgment against them.

■ Second, defendants contest the damages figure set by the Magistrate. Magistrate Gershon calculated the damages by effectively treating the leases as conditional sale or purchase money mortgage transactions, and then subtracting the proceeds of the foreclosure sale of the equipment from defendants' unpaid indebtedness for principal—i.e. deducting the amounts attributable to interest from the installment payments, then adding up the installment payments. Defendants do not object to this manner of computing damages. They simply contend that they owe LSC $147,380.70 instead of $341,583. In their letter opposing Magistrate Gershon's Report, defendants assert:

> [I]f this be caculated [sic] as a Straight Loan Transaction, then I hereby submit a copy of the total funds received by United Services, Inc. to be ONE HUNDRED SIXTY SEVEN THOUSAND, SEVEN HUNDRED AND SEVEN DOLLARS AND NO/100 CENTS ... less TWENTY THOUSAND, THREE HUNDRED AND TWENTY DOLLARS AND 21/100 CENTS ... which was paid in advance....

Defendants have submitted a copy of a check for $167,707 made out to United Services as proof of the actual amount of the "loan," and a copy of a check made out to ABL for $20,320.21 as proof of its partial repayment.

Defendants obviously misunderstand Magistrate Gershon's reference to the leases as "straight loan transactions." The "loan" mentioned by the Magistrate has nothing to do with the actual transfer of money to United Services. The Magistrate simply treated the sum owed by United Services for the equipment as money "loaned" to United Services. The $167,707 figure introduced by defendants in their letter bears no relation to the value of the leases whose obligations defendants assumed. Although it is conceivable that United Services may have received a loan of $167,707 at some point, that purported loan is not the subject of this dispute. This dispute concerns only the two equipment leases from LSC to United Services which defendants guaranteed. Therefore, defendants' second objection is without merit.

After carefully examining the record, this Court has arrived at the independent conclusion that Magistrate Gershon correctly found that plaintiff is entitled to a deficiency judgment of $341,583. In addition, this Court finds no clear error on the face of the record regarding the uncontested portions of the Magistrate's Report.

## CONCLUSION

For the reasons set forth above, Magistrate Gershon's Report and Recommendation is affirmed in its entirety. A copy of the Report and Recommendation is annexed to this opinion.

SO ORDERED.

## APPENDIX

## REPORT AND RECOMMENDATION

NINA GERSHON, United States Magistrate:

This is an action brought pursuant to the court's diversity jurisdiction on guarantees of equipment leases. The *pro se* defendants, in their letter answer to the original complaint, did not deny the allegations of the complaint. Thereafter, defendants failed to answer or move with respect to the amended complaint. On that basis, a default judgment was entered and the mat-

ter was referred to me to conduct an inquest.

The defendants were notified of the inquest but did not appear. Nor did they submit a counter-statement of damages, although given an opportunity to do so in response to plaintiff's proposed findings. However, they submitted a letter, which will be submitted to Judge Conner with this report, which sets forth their view that they owe no money to plaintiff. They assert various defenses, including that plaintiff violated the usury laws and that there was a fraud involved in the second lease (issues not properly raised now that liability has been established by the default judgment); that twenty payments were made on the first lease, a fact which plaintiff acknowledges; and that the resale of a single piece of equipment should have yielded $275,000.

At the inquest, plaintiff offered the testimony of Joseph Corral, plaintiff's assistant treasurer, whose duties include the supervision of records. I found his testimony to be candid and wholly credible. However, there were aspects of essential proof as to which he did not have personal knowledge. Therefore, as discussed below, plaintiff was granted permission to file certain additional support for its damages.

It is undisputed that the defendants guaranteed two equipment leases to United Services, Inc., of which they are the principals. The lessor, American Bankers Leasing, Inc., assigned the leases to plaintiff. Following the lessee's default in payment on the leases, the items of equipment which were the subject of the leases were sold at public auction on April 10, 1985 for $50,000 apiece.

*Unpaid Balance of Rent.* As the result of the decision in *Leasing Services Corporation v. Carbonex*, 512 F.Supp. 253, 260 (S.D.N.Y.1981), where this court found issues of fact as to whether the lease term allowing plaintiff to deduct 15% of the total rent from the amount credited to the debtor from the sale of the equipment is unconscionable, plaintiff calculated the balance due as a straight loan transaction under Florida law. Based upon the plaintiff's

records, the witness calculated the balance due, after deducting all payments received, at the time of the default on the June 1982 lease (Exs. 1–3) ("first transaction") as $236,925. He calculated the balance due at the time of the default on the June 1983 lease (Exs. 4–7) ("second transaction") as $271,287.92. These balances include the finance charges outstanding at the time of the default.

In order to recalculate the transaction as a straight loan transaction (which benefits the defendants), plaintiff used as the balance due not the amounts set forth above, which include the finance charges, but lesser amounts arrived at by recomputing each payment so as to apply it first to interest, at the maximum Florida rate of 18%, and then to the principal. Under this recalculation, the unpaid principal on the first transaction, at the time of the default, was $187,837, and the unpaid principal on the second transaction was $216,138.

Applying the 18% interest rate to each balance from the date of the last payment (July 24, 1984 on the first transaction and December 13, 1984 on the second transaction) until the date of the auction of the equipment (April 10, 1985) yields interest due on the first transaction of $25,036 and on the second transaction of $12,572. Thus, as of the date of the auction, $212,873 ($187,837 plus $25,036) was due on the first transaction and $228,710 ($216,138 plus $12,572) on the second transaction.

*The $60,000 Withholding on the Second Transaction.* Defendants challenge a $60,000 withholding on the second transaction. Mr. Corral explained that the $60,000 is an amount plaintiff withheld from American Bankers Leasing, Inc., as a reserve on the total purchase price for the assignment to plaintiff of the lease agreement. Plaintiff was obligated to pay the amount upon collection of the first 24 monthly installments of rent from the lessee (See Ex. 8), an event which never took place. The purpose of this reserve was to secure the sum withheld in the event of a default. Although plaintiff has no obligation to turn over the $60,000 where, as here, the account is in default, upon collec-

tion of the full obligation from defendants, plaintiff will be obligated to pay the $60,000 to American Bankers Leasing, Inc. In any event, the $60,000 withholding by plaintiff from the amount owed to its assignor provides no basis for reducing defendants' indebtedness to plaintiff.

■ *Sales/Use Taxes.* Plaintiff's claim for recovery of sales and use taxes should be denied. No payment of such taxes was made by plaintiff. Nor can recovery be based on an alleged, but unproven, inchoate obligation to pay the taxes if plaintiff recovers.

*Personal Property Taxes.* Similarly, plaintiff failed to provide proof of the item of alleged damage characterized as personal property taxes. At the inquest, counsel offered to provide such proof at a later time, but never did so.

■ *The Sale of the Equipment.* Plaintiff's witness had no personal knowledge of the auctions at which the equipment was sold. Plaintiff was permitted to submit proof by affidavit.

Public sales of the equipment were advertised in various newspapers including the "Contractor Hotline," prior to the sales. Brandoff Afft., Par. 3, Exs. C, D, and E. In addition, a copy of the Notice of Public Sale was mailed to twenty-six potential bidders with a cover letter soliciting inquiries about the equipment being sold. *Id.* Par. 3(d), Ex. F. However, in each instance the plaintiff was the purchaser and there were no other bidders. *Id.*, Par. 3, Exs. A, B. The sale price for each piece of equipment was $50,000.

Although plaintiff's proof as to the commercial reasonableness of the sale was limited to the facts set forth above, defendants have offered no basis, other than a wholly conclusory assertion that the equipment was worth more than was obtained, for finding that plaintiff did not act in a commercially reasonable manner. That plaintiff was the sole bidder and ultimate purchaser does not of itself invalidate the sale as unreasonable. *See Leasing Services Corp. v. Diamond Timber, Inc.*, 559 F.Supp. 972, 979 (S.D.N.Y.) affd. no opin.

729 F.2d 1442 (2d Cir.1983); *In re Zsa Zsa Limited*, 352 F.Supp. 665, 671–672 (S.D.N.Y.1972), affd. no opin. 475 F.2d 1393 (2d Cir.1973). Plaintiff has established the commercial reasonableness of the advertising and sale. *See Leasing Services Corp. v. Carbonex, supra*, 512 F.Supp. at 258–260.

Subtracting the $50,000 sales price from each indebtedness yields a deficiency of $162,873 on the first transaction and $178,710 on the second.

■ *Interest from the date of the auction.* Plaintiff seeks application of the 18% interest rate to the balance due after the deduction of $50,000 to the date of the inquest. This application should be denied. Plaintiff has not established a basis for treating the debt as a loan transaction even after the auction of the equipment and the determination of a deficiency.

*Conclusion.* In sum, plaintiff is entitled to a deficiency judgment of $162,873 on the first transaction and $178,710 on the second transaction for a total of $341,583.

Copies of this report and recommendation are being mailed today to counsel for plaintiff and to the *pro se* defendants, who are hereby advised that any objections to this report should be served and filed, with a copy to me, in conformity with Rule 72(b) of the Federal Rules of Civil Procedure, which provides that specific, written objections must be served and filed within ten days after being served with a copy of the report.

Dated: January 14, 1988