[No. 26286. *En Banc.* September 16, 1937.]

KELLY SPRINGFIELD TIRE COMPANY, *Respondent*, v. J. E. FAULKNER, *Appellant.*[1]

[1]Reported in 71 P. (2d) 382.

*Williams & Davis,* for appellant.

*Wm. Sheller* and *John C. Richards,* for respondent.

ROBINSON, J.—In the complaint of respondent, it was alleged, among other things, that one Oren Haight applied for credit and it was extended to him by respondent, appellant guaranteeing in writing any indebtedness of Haight to respondent up to the sum of one thousand dollars. It was further alleged that Haight became indebted to respondent in excess of one thousand dollars; that respondent was unable to collect that sum and prayed for judgment against appellant in the sum of one thousand dollars.

In his answer, appellant admitted the signing of the guaranty, but denied the other allegations of the complaint, and further alleged two affirmative defenses, which were later amplified and detailed, as stated in an offer of proof made after the close of the case for respondent, as hereinafter recited.

Respondent denied the material allegations in the affirmative defenses.

The case came on for trial before the court and a jury, and respondent introduced its evidence, which showed that Haight had become indebted to respondent for about $2,400, after the signing of the guaranty, less a credit of about $800 for merchandise returned, and that Haight was indebted to respondent in the sum of about $1,600.

The material parts of the guaranty, which was introduced in evidence, read:

"The guarantor hereby waives (1) notice of acceptance of his guaranty and acknowledges that he has received due notice of acceptance; (2) notice of orders received from customer and/or delivery of mer-

chandise and materials from time to time delivered by the company to the customer; (3) notice of any default in any payment by the customer; (4) notice of presentment, demand, protest, notice of protest or of nonpayment of any check, draft, note or acceptance covered by this guaranty; (5) any and all defenses, offsets or counterclaims which the customer has or may have to any claim at any time made by the company against the customer; and (6) notice of any default of customer in carrying out any settlement, adjustment or compromise.

" . . . . . . . . .

"The liability of the guarantor under the terms hereof, shall be and is limited to $1,000, but the company shall have and is hereby given the right and privilege without notice to the guarantor (but shall not be required so to do), to extend credit to the customer in an amount exceeding the limit of this guaranty, without impairing the guarantor's liability to the full amount hereunder but nothing herein contained shall be deemed to require the company to extend any definite amount of credit to the customer.

"The guarantor hereby agrees that the whole of his agreement with the company is herein set forth and that there is and can be no verbal or other written contract, agreement, understanding or custom whereby the terms and conditions of this guaranty have been or can be affected, changed, varied, interpreted, construed, modified or waived in any manner whatever unless set forth in writing signed by the company by its general or assistant general credit manager and endorsed on this agreement itself; and any separate verbal or written agreements with the company's salesmen or others which are or shall be at variance with this agreement are not and shall not be binding upon the company. The guarantor hereby acknowledges that at the time of the execution and/or delivery of this agreement there are not existent any conditions precedent, concurrent or subsequent whatsoever, affecting, impairing, modifying or changing in any manner or way the obligations of the guarantor to the company hereunder, or the immediate taking effect of this guaranty as the sole agreement between

the guarantor and the company with respect to guaranteeing the customers obligations to the company."

At the close of respondent's evidence, counsel for appellant made an opening statement to the jury, at the close of which counsel for respondent moved for judgment on the ground that the statement on behalf of appellant showed no defense.

The court indicated that he would grant the motion, whereupon counsel for appellant asked for permission and was allowed to make an offer of proof.

The opening statement and the offer of proof were practically the same. The statement recited that appellant owned some lots in Everett which had been leased for a service station to Oren Haight, who was operating it in 1933; that a duly authorized representative of respondent wanted Haight to put its tires in the service station for sale; that, after some negotiations, appellant guaranteed the payment for merchandise purchased from respondent by Haight to the extent of one thousand dollars; that this guaranty was entered into by appellant under the express agreement and representation made by and between appellant and respondent by its duly authorized agent that respondent would extend to Haight a continuous credit for the purpose of purchasing tires and merchandise from respondent to be sold at Haight's place of business, and that Haight would be required to have on hand at all times merchandise purchased from respondent of a value of not less than one thousand dollars; that any credit extended to Haight over and above one thousand dollars should be paid promptly on the tenth of the following month; that the one thousand dollars worth of merchandise which Haight was to continue to keep would be a security so that appellant would lose nothing on the guaranty.

Appellant further offered to prove that the district manager of respondent came to the service station of Haight at about five o'clock in the afternoon on February 3, 1934; that the district manager then and there demanded of Haight that he deliver to respondent all tires and merchandise on hand which had been purchased from respondent, which inventoried about eight hundred dollars; that Haight then and there advised the district manager that he could not deliver to him the tires and merchandise without the consent of appellant; that thereupon appellant was called in, and there, in the presence of Haight, appellant told the district manager that he could not remove these tires unless appellant was released from the guaranty. Whereupon, the district manager then and there agreed with Haight and appellant that, if respondent was permitted to take the tires and merchandise, amounting to about eight hundred dollars in value, appellant would then and there be released from his guaranty; that, pursuant to this agreement, the tires were then and there delivered to respondent and were taken away in a truck and kept; that it was expressly agreed, at the time of taking away the tires, between Haight, appellant, and the district manager of respondent, that, upon the delivery of the tires to the district manager as agent of respondent, appellant would be released from any obligation under this guaranty; that the merchandise was actually received by respondent and retained, with knowledge of this agreement.

The trial judge granted the motion of respondent on the ground that the defense attempted to be set up by appellant was foreclosed by the written agreement, which said that "any variance should be in writing signed by specific officers named therein of the company."

The court instructed the jury to bring in a verdict in favor of respondent against appellant in the sum of one thousand dollars, which verdict was returned. A motion for a new trial was denied and judgment entered on the verdict in favor of respondent for one thousand dollars.

The guaranty, being an agreement to answer for the default of another, was required by the statute to be in writing. It is well settled by decisions of this court that an agreement required by law to be made in writing may be modified or abrogated by a subsequently executed oral agreement.

In *Gerard-Fillio Co. v. McNair*, 68 Wash. 321, 123 Pac. 462, we said:

"While it is the rule that a written executory agreement to sell or purchase real estate cannot be rescinded or abrogated by an oral executory agreement to rescind or abrogate, it does not follow that such an agreement cannot be modified or abrogated by an executed oral agreement. On the contrary, it is recognized by our own cases above cited, and it is the rule of all the cases in so far as we are advised, that an executed oral contract to modify or abrogate a written contract, required by statute to be in writing, can be successfully pleaded as a defense to an action on the original contract. To hold otherwise is to make the statute of frauds an instrument of fraud; for it would be a fraud to allow a person to enforce a contract which he had agreed on sufficient consideration to modify or abrogate after he has accepted the consideration for its modification or abrogation."

The decision has been approved in the following cases: *Oregon & Washington R. Co. v. Elliott Bay Mill & Lumber Co.*, 70 Wash. 148, 126 Pac. 406; *Stoner v. Fryett*, 91 Wash. 89, 157 Pac. 213; *Clements v. Cook*, 112 Wash. 217, 191 Pac. 874; *Conlan v. Spokane Hardware Co.*, 117 Wash. 378, 201 Pac. 26; *Kupka v. Sanders*, 136 Wash. 562, 240 Pac. 905; *Mott v. McDonald*, 147

Wash. 106, 265 Pac. 153; *Gabrielson v. Swinburne,* 184 Wash. 242, 51 P. (2d) 368.

Although the guaranty provided, among other things, that it could not be modified or abrogated except in writing and in the manner provided in the contract, it is well settled that such a contract may be modified or abrogated by the parties thereto in any manner they choose, notwithstanding provisions therein prohibiting its modification or abrogation except in a particular manner.

In *Ritchie v. State,* 39 Wash. 95, 81 Pac. 79, a case involving an architect's contract, of such a defense we said that "may be valid and may not;" also:

"It presents a question of fact, not of law . . . But it must be remembered that a party cannot, by contract, limit his own power as to its modification, or as to the making of future contracts. Notwithstanding the parties in this case agreed that no charges for extra compensation should be made on any account whatever, unless previously agreed upon in writing, they nevertheless retained full power to modify this contract, or to make a further contract without a writing; and in this case it is for the court or jury to say, under all the circumstances, whether the services mentioned in the fourth cause of action were performed under the written contract attached to the answer, or under some subsequent agreement, express or implied. *Wilkins v. Wilkerson* (Tex. Civ. App.), 41 S. W. 178; *Bartlett v. Stanchfield,* 148 Mass. 394, 19 N. E. 549, 2 L. R. A. 625. In determining this question, they have a right to take into consideration the terms and provisions of the written contract between the parties."

6 R. C. L. 914, § 299, states:

"It is true that a simple contract completely reduced to writing cannot be contradicted, changed, or modified by parol evidence of what was said and done by the parties to it at the time it was made, because the parties agreed to put the contract in writing and to

make the writing part and evidence thereof. The very purpose of the writing is to render the agreement more certain and to exclude parol evidence of it. Nevertheless, by the rules of the common law, it is competent for the parties to a simple contract in writing, before any breach of its provisions, either altogether to waive, dissolve, or abandon it, or to add to, change, or modify it, or vary or qualify its terms, and thus make it a new one. . . . Moreover, though the parties to a contract may stipulate that it is not to be varied except by an agreement in writing,. they may, by a subsequent contract not in writing, modify it by mutual consent. One who has agreed that he will only contract by writing in a certain way does not thereby preclude himself from making a parol bargain to change it. There can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing, and every agreement of that kind is ended by the new one which contradicts it."

But there is another and more direct and compelling reason why the judgment must be reversed. The latter part of the offer of proof stated facts which, if true, released the appellant from his obligation under the guaranty, no matter what its terms were. The appellant offered, in substance, to prove that Haight refused to allow the respondent to remove the tires without appellant's consent; that the respondent offered to release appellant from his guaranty if he would consent; that he did consent and respondent took the tires. If such a transaction took place and the respondent's district manager had authority to bind it, and it is alleged that he did, the appellant is entitled to say: What I agreed to do in the written guaranty is of no consequence at all. I did something which the respondent agreed to accept as a discharge of the obligation, and I was released. That defense could obviously be asserted without, in any way, varying the terms of the written guaranty.

The judgment is therefore reversed, and the case remanded for further proceedings.

STEINERT, C. J., TOLMAN, BEALS, MILLARD, GERAGHTY, BLAKE, and MAIN, JJ., concur.

HOLCOMB, J., concurs in the result.

