[No. 3125–3. Division Three. November 20, 1979.]

CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC., *Respondent,* v. GREGORY T. GIER, ET AL, *Appellants,* WESTERN SURETY COMPANY, *Respondent.*

*Mike Johnston* and *Campbell, Johnston & Roach,* for appellants.

*Edward L. Douglas, James E. Egan,* and *Westland, Sonderman & Egan,* for respondents.

ROE, J.—May a written guaranty be orally, mutually terminated? Defendant Gregory Gier started an electric service business known as Greg's A–1 Electric. He obtained a line of credit from plaintiff Consolidated Electrical Distributors, Inc. (CED), but only after Gregory Gier's father, Robert L. Gier, signed on January 21, 1976, a guaranty of his son's account. By its terms, CED would not be required to proceed against the purchaser (Gregory) as a condition precedent to enforcing the guaranty. The guaranty also provided that it would remain in full force and effect until written revocation was received, which revocation would only affect indebtedness thereafter incurred and would only relieve the person giving the notice.

According to an affidavit of Robert Gier, resisting a motion for summary judgment, after several months had elapsed since the execution of the guaranty agreement, he visited CED's offices and mentioned the guaranty to the

local manager. He was told by the manager that the business had been going for several months and that Greg's A–1 Electric had been taking care of its accounts properly and that CED would no longer look to Robert Gier as guarantor of the account. Robert Gier swore he relied on this statement.

After that conversation, Gregory was involved in a serious motorcycle accident and was hospitalized for approximately 14 months. Prior to that he had been self-supporting and had been living away from the family home since June 1966, or approximately 12 years. His father attempted to wind up the business with the assistance of another employee. Apparently an account was still owing by Gregory to plaintiff. An action was brought by plaintiff against Gregory T. Gier and Jane Doe Gier, his wife, doing business as Greg's A–1 Electric, and in the same action, against Robert L. Gier and Jane Doe Gier, his wife. Service was attempted on Gregory Gier on September 7, 1977, at the senior Gier's place of residence, while, according to an uncontradicted affidavit, Gregory was in the hospital.

No lawyer appeared for Gregory; the father appeared for himself and in a handwritten instrument indicated that Gregory was incompetent. On December 5, 1977, an order of default was entered against Gregory T. Gier in the amount of $4,859.09, plus interest and costs. The affidavit of service shows service of the summons and complaint upon Robert Gier and Gregory Gier on September 7, 1977, by substituted service on Gloria Gier, wife and mother, a person of suitable age and discretion, then resident therein at the house and usual abode of said defendant (singular). The question of proper service upon Gregory Gier is open to dispute.

In October 1977, plaintiff served upon Gregory Gier and Robert Gier a request for admission of fact and genuineness of documents. These were not disputed or denied and must be accepted as verities. Thus, they admitted the execution of the guaranty by Robert Gier, that the amount of $4,859.09 was due on the account, and that defendants

Robert Gier and wife had failed to pay CED any sum whatever.

At a hearing on June 29, 1978,[1] on the guaranty, summary judgment was granted against defendant Robert L. Gier in the amount of $4,859.09, and the court stated:

There was no revocation in writing to release the defendant Gregory [Robert?] Gier from his contractual obligation. Also, there was no consideration for an agreement to release the defendant in the absence of his written revocation; therefore, there is no genuine issue as to any material fact existing and there is no just reason for delay, and judgment should therefore be entered in favor of plaintiff against the defendant Robert L. Gier and the marital community . . .

■ Defendant's counsel claimed error as to Gregory Gier because of the alleged defective substituted service. That does not control the disposition of this case for two reasons. First, by the terms of the guaranty, it was not necessary to serve Gregory in order to hold Robert Gier. Pursuant to *Amick v. Baugh*, 66 Wn.2d 298, 402 P.2d 342 (1965), an absolute guarantor is liable upon no other conditions than default. Second, Gregory T. Gier appeared pro se along with Robert Gier at the hearing on the summary judgment held on March 16, 1978, when Robert admitted that there were some unpaid bills. There was no error in letting the judgment against Gregory stand.

The father was advised to get an attorney, and the matter was continued for 2 weeks. No mention was made at that time about the defective service. In the hearing before another judge on May 26, 1978, attorney Johnston stated that he represented Robert Gier, but he would be presenting the motion to set aside the default against Greg. Determining that summary judgment against the father would be appropriate, the court stated:

---

[1]In a supplemental hearing on a motion for summary judgment against Robert Gier, the amount delinquent was modified to read $4,859.09, even though the statements presented at the trial reflected $5,294.05. Presumably there had been some payment or adjustment.

It is clear that the contract could be abrogated by a subsequent oral agreement. I'm basing it on lack of consideration and the fact that Mr. Gier had a way, had he chosen to do so, of revoking the guaranty.

Thus, the court did not resolve the question posed by the affidavit of Robert Gier opposing summary judgment, namely, that there had been a mutual oral termination.

On June 29, 1978, before the same judge, there was a hearing on a motion to set aside the default against Gregory Gier on the basis of improper service against him. This was objected to by opposing counsel on the grounds that there was no affidavit of meritorious defense. Mr. Johnston indicated that if there is no service, the judgment is void. That would apply only to Gregory Gier. There was no suggestion of a meritorious defense. Later, however, Mr. Johnston, counsel for Robert Gier, stated:

> The only defense that I'm aware of, your Honor, to be candid about it, is the amount that was advanced on Mr. Gier's account and for who purchased it and the amounts. That's the only defense that I'm aware of. In other words, it's not whether or not there is liability; it is how much liability because I am not aware, your Honor, of any particular defense that assuming that these items were purchased and I gather they were. It only goes to the amount.

This is not a concession that the entire amount owed by Gregory is admitted by Robert, but only the amount due at the date of the oral rescission would be subject to the guaranty.

■ Summary judgment was then entered against Robert Gier for the amount according to the proof presented against Gregory. Under CR 56, summary judgment may be granted only if the pleadings, depositions, admissions, and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A material fact is one upon which the outcome of the litigation depends. *Morris v. McNicol*, 83 Wn.2d 491, 519 P.2d 7 (1974). Does Robert Gier's affidavit,

though contradicted by an affidavit of plaintiff, constitute a legal defense?[2]

■ ■ It is correct that according to the terms of the guaranty, a unilateral revocation by the guarantor must be in writing to release him from subsequent charges to the account. But this is not a case involving a unilateral revocation in writing. Such a revocation would only affect indebtedness thereafter incurred. Nor is this a case involving a modification of a continuing written instrument. The factual question presented by the affidavit of Robert Gier is: was there a cancellation of the guaranty, which is a bilateral act rather than a revocation which would be a unilateral act, or a continuing new agreement by a bilateral modification?

As stated in *Woolen v. Sloan,* 94 Wash. 551, 553, 162 P. 985 (1917):

A contract which the statute requires to be in writing cannot be abrogated or rescinded by a subsequent oral contract, unless such oral contract is accompanied by acts of part performance sufficient to remove the requirement that it shall be in writing.

This involved a real estate option in which other things were required to be done. The case is authority that an oral contract is a vehicle for abrogating a contract required by the statute of frauds to be in writing.

In *McInnis v. Watson,* 116 Wash. 680, 682, 200 P. 578 (1921), the court stated:

In this state [Washington] the rule was early adopted and has been followed since, that a contract modifying or

---

[2]Robert Gier's affidavit specifically says:

"Affiant, several months after he executed the original guaranty agreement visited the place of business of plaintiff . . . While at the place of business affiant mentioned the guaranty to Mr. Richard Bowman, the local CED manager. Affiant inquired of the manager about the guaranty and told Mr. Bowman that the business had been going for several months. Mr. Bowman told affiant that the business of Greg's A-1 Electric had been taking care of its account properly and that CED would no longer look to affiant as a guarantor of the account any further. Affiant relied on this statement because of the position Mr. Bowman held at CED."

abrogating a prior contract, required by statute to be in writing, must itself be in writing to be obligatory. . . . this rule was followed, with the modification that "an *executed* oral contract to modify or abrogate a written contract, required by statute to be in writing, can be successfully pleaded as a defense to an action on the original contract."

(Italics ours. Citations omitted.)

This principle was recognized in *Anderson v. Anderson,* 128 Wash. 504, 223 P. 323, 38 A.L.R. 292 (1924), involving an agreement to purchase real estate. It was alleged there was a mutual, oral rescission. The court held that there was no meeting of the minds and also there was a failure to show any acts of performance by any party. The court repeated the rule at page 507:

The original contract being in writing, and the subject-matter being such as to require it to be in writing, any agreement for rescission of it must also be in writing, *unless* a mutual, oral rescission of it be rendered effective by part performance.

(Italics ours.)

In *Kelly Springfield Tire Co. v. Faulkner,* 191 Wash. 549, 71 P.2d 382 (1937), the defendant Faulkner guaranteed the tire account of one Oren Haight not to exceed $1,000. Haight became indebted to the Kelly Springfield Tire Co. for $2,400, less a credit of $800 for merchandise returned. Kelly Springfield sought $1,600 from Faulkner. The guaranty provided that there could be no change, modification, or waiver in any manner whatever unless set forth in writing and signed by the company vice-general or assistant general credit manager and endorsed on the agreement itself. The court refused Faulkner's offer of proof that when the tire company sought to recover tires from Haight, Faulkner was called to the place since Haight would not release the tires without Faulkner's permission. Haight agreed to release the tires to the plaintiff upon an agreement that then Faulkner would be released from the guaranty. Pursuant to this oral agreement, the tires were taken by the plaintiff's agent. The trial judge refused the offer of

proof because of the provision in the written agreement which said that any variance should be in writing.

In reversing, the court stated at page 554:

> The guaranty, being an agreement to answer for the default of another, was required by the statute to be in writing. It is well settled by decisions of this court that an agreement required by law to be made in writing may be modified or abrogated by a *subsequently executed oral agreement.*

(Italics ours.) The court cited·*Gerard–Fillio Co. v. McNair,* 68 Wash. 321, 123 P. 462 (1912), which involved an executory agreement to purchase real estate. That case stated:

> [A]n executed oral contract to modify or abrogate a written contract, required by statute to be in writing, can be successfully pleaded as a defense to an action on the original contract. To hold otherwise is to make the statute of frauds an instrument of fraud; for it would be a fraud to allow a person to enforce a contract which he had agreed on sufficient consideration to modify or abrogate after he has accepted the consideration for its modification or abrogation.

*Gerard–Fillio Co. v. McNair, supra* at 327.

In *Kelly Springfield Tire Co. v. Faulkner, supra* at 555, the court stated that when such contracts shall be in writing and the writing provides any modification shall be in writing:

> [I]t is well settled that such a contract may be modified or abrogated by the parties thereto in any manner they choose, notwithstanding provisions therein prohibiting its modification or abrogation except in a particular manner.

The contradiction or modification under the parol evidence rule refers to changes alleged to have been done at the time of the original execution of the agreement. Nevertheless, the parties may subsequently waive, dissolve or abandon, change or modify an instrument. This may be done by mutual consent.

6 R. C. L. 914, § 299, states:

> "One who has agreed that he will only contract by writing in a certain way does not thereby preclude himself from making a parol bargain to change it. There can

be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing, and every agreement of that kind is ended by the new one which contradicts it."

*Kelly Springfield Tire Co. v. Faulkner, supra* at 555–56.

The court stated further at page 556, "[T]here is another and more direct and compelling reason why the judgment must be reversed." That is that there was performance, namely, that the plaintiff took the tires and the defendant Faulkner was entitled to say:

What I agreed to do in the written guaranty is of no consequence at all. I did something which the respondent agreed to accept as a discharge of the obligation, and I was released. That defense could obviously be asserted without, in any way, varying the terms of the written guaranty.

Thus, the judgment was reversed. It is clear from this decision that the terms of the contract providing for modification being in writing can be waived by subsequent oral agreement and it is effective if executed.

As stated in *Haley v. Brady*, 17 Wn.2d 775, 788, 137 P.2d 505, 146 A.L.R. 859 (1943):

The right to modify a written contract by a subsequent oral one is unquestioned[,]

citing *Kelly Springfield Tire Co. v. Faulkner, supra. Haley* involved a case where there were oral contracts for extra labor and material upon the construction of a building. Such oral modifications are common in construction contracts.

In *Ennis v. Ring*, 49 Wn.2d 284, 290, 300 P.2d 773 (1956), discussing some leases involving land, reference is made to *Kelly Springfield Tire Co. v. Faulkner, supra,* "for the proposition that an *executed* oral contract is not within the statute of frauds."

The court stated, "An executed contract is one '. . . where nothing remains to be done by either party . . .'". In the case of *Ennis v. Ring, supra,* there had not been a surrender of certain land. The agreement was executory. In the

case at bench, if Robert Gier's affidavit is true, nothing remained to be done.

CED cites *Haynie v. First Nat'l Bank,* 117 Ga. App. 766, 768, 162 S.E.2d 27, 30 (1968), which involved the question whether a contract of guaranty was entire or severable. The court stated:

> At common law a contract of guaranty, though in writing itself, could be revoked or terminated by parol, but where the instrument provides otherwise a revocation or termination must be in accordance with its terms.

This refers to a unilateral termination or revocation as would appear from the concurring opinion.

 Whether new consideration is necessary for the mutual cancellation of an executory contract has been the subject of inconsistent interpretation by the courts of this state. *See Rosellini v. Banchero,* 83 Wn.2d 268, 272, 517 P.2d 955 (1974). Some courts have held that independent consideration is not necessary for the mutual cancellation of an executory contract. Some have held that the consideration of the original agreement is sufficient. The latest Washington rule would appear to be that the reciprocal surrender of contractual rights supplies necessary consideration. *See La Plante v. Hubbard,* 125 Wash. 621, 217 P. 20 (1923), *overruled in part* in *Rosellini v. Banchero, supra,* which refers at page 272 to 15 S. Williston, *A Treatise on the Law of Contracts* § 1826 (3d ed. 1972): ""The promise of one party to forgo his rights under the contract is sufficient consideration for the promise of the other party to forgo his rights."" This case must be distinguished from the case where one party agrees to perform some additional obligation, in which case additional consideration would be required. *Westland Constr. Co. v. Chris Berg, Inc.,* 35 Wn.2d 824, 215 P.2d 683 (1950).

In the case at bar, CED may have surrendered the right to require a written modification and Robert Gier may have waived his absolute right to revoke in writing effective that day.

Accordingly, there is a disputed question of fact as to whether there was a mutual oral termination of the guaranty. Summary judgment was improper. Reversed and remanded.

GREEN, C.J., and MUNSON, J., concur.