**LEASING SERVICE CORPORATION, Plaintiff,**

v.

**DIAMOND TIMBER, INC., Don Durham and Lu K. Fraser, Defendants.**

No. 81 Civ. 7578 (CBM).

United States District Court, S.D. New York.

Jan. 28, 1983.*

Form on July 2, 1982.

Sol D. Bromberg, New York City, for plaintiff.

Don Durham and Lu K. Fraser, defendants pro se.

## OPINION

MOTLEY, Chief Judge.

In this diversity action, plaintiff, Leasing Service Corporation, assignee of an equipment lease contract, brought suit against defendants Diamond Timber, Inc., the les-

see of the equipment, and Don Durham and Lu K. Fraser, the guarantors of the obligations of Diamond Timber, for a deficiency arising after default and public sale of the repossessed equipment.

Plaintiff, asserting that there are no triable issues of fact in this case, has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the court grants plaintiff's motion.

FACTS

The following facts are not in dispute. On June 5, 1979, defendant-lessee entered into an Equipment Lease Agreement with Cascade Loggers Supply, Inc. (Cascade) for a Lima model log loader machine. The total rent was $222,173.80. As part of the financing arrangement, on the same date, Cascade assigned the lease to plaintiff.[2] Defendants Durham and Fraser, officers of Diamond Timber, executed a guaranty of Diamond Timber's obligations to plaintiff.

Diamond Timber took possession of the equipment and executed a Delivery/Installation Certificate in which it acknowledged complete and satisfactory delivery of the equipment. The loader machine burned the next day and Cascade thereupon offered to repair the machinery at its expense and attempted to do so. On January 3, 1980, defendant-lessee executed an Extension Agreement which was accepted by plaintiff. The Extension Agreement gave Diamond Timber a three month payment extension to allow for the time that the machinery was being repaired. The Extension Agreement also provided that "... the undersigned [defendant-lessee] warrant that the above indebtedness is a valid, binding and

1. Defendants previously moved to dismiss this action for lack of jurisdiction, claiming that an indispensable party, the original lessor of the equipment, had identical citizenship as defendants and thus destroyed diversity jurisdiction. Defendants also moved in the alternative for a transfer of this action to the Federal District Court for the Western District of Washington, claiming that all of the witnesses and real parties in interest in this case reside in the State of Washington.
   On March 11, 1982, the court denied defendants' motion. In this respect, the court notes

that the Extension Agreement, which was executed by defendants, provides that "the undersigned agrees to the venue and jurisdiction of any court located within the State and County of New York regarding any matter involving you and us."

2. The Lease Agreement provides that "[l]essee ... acknowledges notice of the intended assignment of this lease to either Credit Alliance Corp. or Leasing Service Corp. ..."

existing obligation of the undersigned, due and payable without any defense, counterclaim or offset whatsoever."

Diamond Timber made six rental payments after the date of the Extension Agreement. It failed to make any payments after the September, 1980 payment (which plaintiff received on June 3, 1981), thereby leaving an unpaid balance of $178,-747.41.

Plaintiff thereafter repossessed the equipment and a public sale was scheduled at the premises of Cascade in Chehalis, Washington for October 28, 1981. At this sale, plaintiff bid $62,700.00 for the equipment. It then made a deficiency calculation which included late charges, attorneys' fees and taxes, minus the net auction proceeds. Plaintiff subsequently commenced this action for an alleged deficiency of $248,518.18.

Defendants assert that the equipment was defective at delivery and burned shortly thereafter due to faulty wiring. They claim that after Cascade repaired the equipment, it entered into an oral agreement with defendants whereby Cascade agreed to accept the machinery back if the repairs proved ineffective. According to defendants, Cascade refused to honor this agreement.

*Discussion*

■ In a motion for summary judgment, the court must determine whether there is a genuine issue of fact to be tried. *Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975). The burden is on the moving party to demonstrate the absence of any material fact in dispute. 524 F.2d at 1320. The party opposing the motion for summary judgment is to be given the benefit of all reasonable doubts in determining whether a genuine factual issue exists. *First National Bank of Cincinnati v. Pepper,* 454 F.2d 626, 629 (2d Cir.1972). Applying this standard, the court concludes that plaintiff has met its burden of proving that there is no genuine factual issue to be tried in this case and that it is therefore "entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ In a diversity action, under the rule of *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the court is to apply the choice of law rules of New York, the forum state. Under the New York choice of law rules, either the intent of the parties determines the law to be applied, *Fleischmann Distilling Corp. v. Distillers Co., Ltd.,* 395 F.Supp. 221, 229 (S.D.N.Y.1975), or the law of the state with the most significant contacts with the matter in dispute governs. *Haag v. Barnes,* 9 N.Y.2d 554, 559, 216 N.Y.S.2d 65, 68, 175 N.E.2d 441, 444 (1961). Where the parties have included a choice of law provision in their agreement, effect is to be given their choice provided that the state chosen bears a reasonable relationship to the agreement. *Fleischmann Distilling Corp. v. Distillers Co. Ltd., supra,* 395 F.Supp. at 229. The parties' intent is not regarded as conclusive, however, for the greater emphasis is placed upon the law of the place which has the most significant contacts with the matter in dispute. *Haag v. Barnes, supra,* 9 N.Y.2d at 559, 216 N.Y. S.2d 65, 175 N.E.2d 441.

■ The Lease Agreement in the present case provides that the agreement shall be determined by the "law of the state . . . of Lessee or Lessor [said assignee hereinafter called Lessor] or the original lessor." Since either Washington law or New York law could therefore apply, the court will apply the "significant contacts" test to determine which law governs. *Haag v. Barnes, supra,* 9 N.Y.2d at 559, 216 N.Y.S.2d 65, 175 N.E.2d 441. Washington, without question, has the greater number of significant contacts with the matter in dispute. Diamond Timber is a Washington Corporation and Durham and Fraser are citizens of Washington. The equipment was supplied by a Washington corporation, defendants signed the lease and the guaranties in Washington, and the sale of the equipment took place in Washington. The only New York contact with the dispute is that plaintiff, the assignee, is a New York corporation. This is not sufficient to overcome the intensity of

contact that exists with Washington, nor is it sufficient to satisfy the "reasonable relation" test. *See Leasing Service Corp. v. Energy Construction Co.,* No. 80 Civ. 2653 (S.D.N.Y. Dec. 3, 1980). The court will therefore apply the law of Washington to this case.[3]

In opposing plaintiff's motion for summary judgment, defendants assert several affirmative defenses and argue that under Washington law: (1) notwithstanding contractual language to the contrary, a written agreement may be modified by a subsequent oral agreement, which occurred here; (2) where specific contractual provisions contravene public policy, they are subject to limitation or invalidation. Here, because the terms of the written agreement prevent defendants from asserting valid defenses, the agreements are void as against public policy and unenforceable; and (3) the sale of the machinery at the auction was not commercially reasonable.

### 1. *The Subsequent Oral Agreement*

■ To support their first claim that the subsequent oral agreement with Cascade discharged their responsibility to plaintiff-assignee, defendants rely on *E.G. Henderson v. Bardahl International Corp.,* 72 Wash.2d 109, 431 P.2d 961 (1967). This case does not support defendants' position because the court there was considering the issue of whether to enforce a purported oral agreement made *prior* to the execution of a written agreement. Further, the Supreme Court of Washington found that the lower court had properly refused to admit parol testimony to vary the written agreement. *Id.* 431 P.2d at 968.

In *Consolidated Electric Distributors, Inc. v. Gier,* 24 Wash.App. 671, 602 P.2d 1206 (1979), another case relied upon by defendants, the court enforced an already executed bilateral modification. It noted, however, that "the original contract being in writing, any agreement for rescission of it must be in writing unless a mutual, oral rescission of it be rendered by part performance." *Id.* 602 P.2d at 1209. Moreover, the court specifically distinguished an executed bilateral contract from an executory contract, such as is at issue here, and stated that with respect to the latter, a unilateral act would require a written modification. *Id.* 602 P.2d at 1209–10.

The Lease Agreement here provides that "[t]his contract contains the entire agreement of the parties and may not be modified except in writing." Wash.Rev.Code § 62A.2–209 states:

(2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

(3) The requirements of the statute of frauds section of this Article (Section 2–201) must be satisfied if the contract as modified is within its provisions.

The Official Uniform Comment following this section explains: "[S]ubsections (2) and (3) are intended to protect against false allegations of oral modifications." In addition, "Subsection (2) permits the parties in effect to make their own Statute of Frauds as regards any future modification of the contract by giving effect to a clause in a signed agreement which expressly requires any modification to by signed writing." *Id.*

Attempts to modify written contracts by subsequent oral agreements, similar to those made by defendants here, were made in *Credit Alliance Corp. v. David O. Crump Sand & Fill,* 470 F.Supp. 489 (S.D.N.Y.1979) (*Crump*).[4] While *Crump* applied the Uniform Commercial Code adopted in New York, as noted in footnote three *supra,* the law of Washington and New York is identical in this area. In *Crump,* the defendants

---

**3.** The choice between New York and Washington law is not of great import, however, because the claims here are governed by the Uniform Commercial Code, adopted by both New York and Washington.

**4.** Credit Alliance Corporation, the plaintiff in *Crump,* and its sister company, Leasing Service Corporation, the plaintiff herein, use almost identical forms in their financing arrangements.

argued that an oral agreement with the assignor, subsequent to the written contract and assignment, satisfied and discharged their obligations to the plaintiff-assignee. The court in *Crump,* citing *Leasing Service Corporation v. Brown Ridge Coal, Inc.,* No. 77 Civ. 2592 (S.D.N.Y. June 29, 1978), stated that it did not have to determine whether the allegations of a subsequent oral agreement were true because the "contract note contains the entire agreement of the parties and may not be modified except in writing. Because the alleged discharge and satisfaction was not in writing, and because [plaintiff-assignee] had indicated no intention to waive this writing requirement, defendant's [lessee's] allegation can not discharge its obligation to [plaintiff]." 470 F.Supp. at 492–93. The same is true here.

In addition to the fact that a modification must be in writing, both parties to the agreement must assent to the modification. Defendants' subsequent oral agreement was made not with plaintiff but with Cascade, who was not a party to the contract after it was assigned. Because the Lease Agreement itself contained notice of the assignment, the Extension Agreement was between defendants and plaintiff (not Cascade), and defendants made payments directly to plaintiff, plaintiff-assignee's rights cannot be affected by any side agreement defendants made with the assignor.[5] *See National Bank of N. Am. v. DeLuxe Poster Co., Inc.,* 51 A.D.2d 582, 378 N.Y.S.2d 462 (2d Dept.1976) (as long as plaintiff establishes that it is entitled to the preferable status accorded certain assignees under the U.C.C. § 9–206(1), its rights could not be affected by a separate written agreement with the assignor). Where, as here, the alleged side agreement is oral, the argument is even stronger for not giving it effect.

### 2. *Unconscionability*

Defendants contend that the waiver of defenses provisions in the lease,[6] the Delivery/Installation Certificate,[7] and the Extension Agreement[8] contravene public policy and are therefore subject to limitation or invalidation under Washington law. Defendants point to *Whitaker v. Spiegel, Inc.,* 95 Wash.2d 408, 623 P.2d 1147 (1981) (usurious contract) and *Dombey, Tyler, Richards and Grieser v. Detroit T & I Railroad,* 351 F.2d 121 (6th Cir.1965) (attorney representation contract) to show that certain courts have declared contracts void and unenforceable as against public policy. Neither of these cases, however, considered a waiver of defense clause which is valid and enforceable under *Wash.Rev.Code* § 62A.9–206(1). This section provides:

> Subject to any statute or decision which establishes a different rule for buyers of consumer goods, an agreement by a buyer that he will not assert against an assignee any claim or defense which he may have against the seller is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses

---

**5.** While the assignee of a lease who can qualify for the special protection afforded by section 9–206(1) is not, strictly speaking, a holder in due course, the purpose of that section is best served by giving such an assignee the protection, in full, accorded to a holder in due course. *National Bank of N. Am. v. DeLuxe Poster Co., Inc.,* 51 A.D.2d 582, 378 N.Y.S.2d 462 (App.Div. 2d Dept.1976).

**6.** The Lease provides, "Lessee agrees not to assert against the Lessor [defined earlier as the Assignee] and any subsequent Assignee any defense, setoff, recoupment, claim or counterclaim which Lessee may have against the original lessor who has executed this lease agreement and/or any subsequent Lessor...."

**7.** The Delivery/Installation Certificate provides:

> 2. ... We understand that we are to look to the supplier for any claims, servicing, or warranties, if any, and we specifically and unconditionally waive any claims, present or future, against you. We fully recognize your right to enforce the lease free from any defenses, offsets or counterclaims.

**8.** The Extension Agreement provides:

> In order to induce you to agree to the foregoing extension and in consideration of your so doing, the undersigned warrants that the above indebtedness is a valid, binding and existing obligation of the undersigned, due and payable without any defenses, counterclaim or offset whatsoever.

of a type which may be asserted against a holder in due course of a negotiable instrument under the Article on Commercial Paper (Article 3).

Here, defendants do not dispute the fact that plaintiff took its assignment for value, in good faith, and without notice of the defense of the oral side agreement with Cascade. In *Crump, supra,* the court held that an identical waiver of defenses was effective against an assignee, even though it appeared only in the Delivery/Installation Certificate and not in the underlying document. *Id.* at 492. This holding was confirmed in *Leasing Service Corp. v. Scotty Hall,* No. 80 Civ. 5392 (S.D.N.Y. Apr. 2, 1981), where the court upheld an identical waiver clause, noting that "[t]his case presents an even stronger case [than *Crump*] for enforcing the waiver because it appears in the Equipment Lease Agreement as well as the Delivery/Installation Certificate." The instant case is even stronger than *Scotty Hall,* because the waiver additionally appears in the Extension Agreement.

### 3. *Commercial Reasonableness*

Defendants claim that the sale of the machinery at the auction was not commercially reasonable. Defendants, however, make no factual allegation to support this bald claim. Fed.R.Civ.P. 56(e) provides that: "... when a motion for summary judgment is made ... an adverse party ... must set forth specific facts showing that there is a genuine issue for trial." Defendants have wholly failed to comply with this Rule.

Plaintiff's resale of the equipment after defendant's default is governed by *Wash. Rev.Code* § 62A.9–504(3), which provides in pertinent part:

Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commer-

cially reasonable ... [R]easonable notification of the time and place of any public sale ... shall be sent by the secured party to the debtor, .... The secured party may buy [the collateral] at any public sale ....

Thus § 9–504(3) imposes two requirements upon a reselling creditor: first, he must send the debtor reasonable notification of the impending sale and second, every aspect of the sale, including the method, manner, time, place and terms must be commercially reasonable. *See Timms v. James,* 28 Wash. App. 76, 79, 621 P.2d 798, 800 (Ct.App.1980) and *Security Trust Co. v. Thomas,* 59 A.D.2d 242, 399 N.Y.S.2d 511 (4th Dept. 1977).

Leasing Service Corporation alleges that it sent copies of the "Notice of Sale" by certified mail to each defendant on October 14, 1981, two weeks prior to the sale. It further alleges that notice of the sale was published in: (1) The Port Angeles Daily News, on October 22, 23, 25, and 26, 1981; (2) The Portland Oregonian, on October 23, 24, 25, 26; (3) The Seattle Times, on October 21, 22, 23, and 24; and (4) The Contractor's Hotline. While defendants deny having received copies of the Notice, they do not allege any facts indicating that they did not actually learn of the sale through the advertisements or other means. While "sent" usually implies notice sent by mail, all that is actually required is actual or constructive receipt of notice. *Chase Manhattan Bank, N.A. v. Natarelli,* 93 Misc.2d 78, 90–91, 401 N.Y.S.2d 404, 412 (Sup.Ct. Monroe Cty.1977). A person is deemed to have notice when he has actual knowledge or when "from all the facts and circumstances known to him at the time in question, he has reason to know that it exists." *Natarelli, supra,* 93 Misc.2d at 91, 401 N.Y.S.2d 404, *citing* 1 *Anderson, Uniform Commercial Code* [2d ed.] pp. 113–114. The court concludes that under the facts presented, plaintiff has met its burden of proving that due notice of the sale was provided. *See Crump, supra* and *Scotty Hall, supra,* where it was concluded, based on similar facts, that due notice of the sale

was given and that the plaintiff was entitled to summary judgment. The court also concludes that as the advertisements gave the time and place of the sale, a description of the equipment and the terms of payment, they were commercially reasonable under *Wash.Rev.Code* § 62A.9–504(3).

At the sale, plaintiff bid on the equipment for $62,700.00. Commercial reasonableness of a sale depends on the procedures employed in the sale, not on the proceeds it generates. *Foster v. Knutson,* 84 Wash.2d 538, 527 P.2d 1108 (1974). *See also Mount Vernon Dodge, Inc. v. Seattle-First Nat'l Bank,* 18 Wash.App. 569, 570 P.2d 702 (Ct.App.1977). *Wash.Rev.Code* § 62A.9–507(2) provides that, "[t]he fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner". *See also Crump, supra,* 470 F.Supp. at 494 n. 6. The fact that the secured party is the purchaser of the collateral does not demonstrate a lack of commercial reasonableness. *See Wash.Rev. Code* § 62A.9–504(3); *In Re Zsa Zsa Ltd.,* 352 F.Supp. 665 (S.D.N.Y.1972), *aff'd mem.,* 475 F.2d 1393 (2d Cir.1973).

Again, defendants have alleged no facts whatsoever to controvert plaintiff's allegations concerning the commercial reasonableness of the sale. The one conclusory statement in defendants' memorandum of law that the sale was not commercially reasonable is not sufficient to raise a genuine issue of material fact necessary to defeat plaintiff's motion for summary judgment.

For the reasons discussed herein, the court grants plaintiff's motion for summary judgment. Plaintiff is to submit a proposed judgment on notice within 20 days of receipt of this opinion.