[No. 39994-2-I.    Division One.    March 2, 1998.]

PACIFIC NORTHWEST GROUP A, *Respondent*, v. PIZZA BLENDS, INC., *Appellant*.

Cox, J., concurs by separate opinion.

*Michael J. Warren* of *Warren & Samples*, for appellant.
*David C. Lundsgaard* of *Graham & Dunn*, for respondent.

ELLINGTON, J. — This case requires us to decide whether summary judgment was properly granted to Pacific Northwest Group for outstanding rent allegedly incurred by Pizza Blends as a holdover tenant. The fundamental issue is whether the parties could orally contract to extend Pizza Blends' tenancy on a month-to-month basis at the original rate, despite a holdover rent requirement in the original written lease and a clause prohibiting oral modification. Long-standing precedent dictates that such clauses are unenforceable because they can be orally abrogated. It is a question of fact whether the clause was abrogated here. Summary judgment was therefore improper.

## Facts

Pizza Blends leased a commercial space from Pacific Northwest Group. The parties' original written five-year lease prohibited oral modification, and provided that if Pizza Blends "held over" beyond the five-year term, rent would be assessed at 1.5 times the normal monthly rate.

Trammel Crow Company managed the property on behalf of Pacific and attempted to negotiate a new lease with Pizza Blends as the September 30, 1995 expiration date approached. No new written lease was ever executed, however, because the parties could not agree to a term: Pacific wanted a one year lease; Pizza Blends wanted a six-month lease.

On summary judgment, Dave Hoffman, a vice president of Pizza Blends, testified that he and Terry McAleer, the marketing director of Trammel Crow, negotiated new lease terms in early September. Hoffman testified that they discussed the possibility that Pizza Blends could pay the normal rent on a month-to-month basis after the written lease expired. According to Hoffman, McAleer was amenable to such an arrangement because no other party was

interested in leasing the space. McAleer was to obtain permission from his supervisor to authorize such an agreement and was to call Hoffman if there was a problem. Hoffman never heard from McAleer again.

Mark Schuur, Pizza Blends' former chief financial officer, testified that he had numerous discussions with McAleer as to the effect of a holdover tenancy. According to Schuur, McAleer "expressly agreed" that Pizza Blends could hold over and pay the normal rent. A letter Schuur wrote to McAleer on the day before the written lease expired purports to document this agreement:

> We are disappointed that you have refused our offer for a six month lease with an option to renew for three years on our space at Northwest Corporate Park-Kent.
>
> This letter documents your desire to continue with us on a month to month basis with 30 days notice to vacate. We will continue to make our normal monthly rent payment until either party gives notice.

Schuur testified that he called McAleer to verify that he received this letter, and that McAleer accepted its terms.[1]

Schuur testified that without the "normal rent" agreement, Pizza Blends would have timely vacated. McAleer denied telling either Hoffman or Schuur that Pizza Blends could extend its tenancy without being obligated to pay the written holdover rate.

On the first business day that followed McAleer's receipt

---

[1]In relevant part, Schuur's declaration provides:

Prior to the September 30, 1995 expiration of the lease term, I had several telephone conversations with Mr. McAleer . . . . It was expressly agreed that Pizza Blends would hold over on a month-to-month basis, and move if [Pacific] found a new tenant or Pizza Blends decided definitely not to enter into a long term lease. Mr. McAleer was primarily interested in making sure the space would be available once a new tenant was found. Rent was to be at the normal rate, i.e., not the 150% hold over rate contained in the Lease. I confirmed this agreement by letter of September 29, 1995 . . . . I called Mr. McAleer to confirm he received it and was in agreement with its terms. In this telephone conversation[,] I confirmed that Pizza Blends would pay its normal rent. McAleer stated that this was acceptable.

of Schuur's letter, Tom Gehrig, a Trammel Crow property manager, wrote to Hoffman and explained that the holdover rent specified by the written lease would be assessed. Gehrig's letter does not mention Schuur's, but McAleer is listed on the "cc line."[2]

There is no unequivocal evidence in the record documenting that the parties had any discussions during the next three months. In January 1996, however, Pacific sent at least two notices to Pizza Blends complaining about the alleged rent delinquency. Schuur became aware of this dispute and called John Robertson, Trammel Crow's property manager responsible for landlord-tenant relations. Schuur testified he left several voice mail messages explaining Pizza Blends' position before he was able to schedule a meeting with Robertson. The two apparently met in February, at which time Robertson maintained Pacific's position that the holdover rate applied. Pizza Blends vacated the premises on March 31, 1996.

Pacific brought this suit to recover the holdover rent and associated late fees. The trial court granted summary judgment to Pacific, finding that there was no issue of fact as to the enforceability of the holdover provision.

## Holdover Rent

Summary judgment is proper only when there is no question of material fact and the moving party is entitled to judgment as a matter of law. *See* CR 56(c). The issue here is whether the alleged oral modification of the existing lease creates a question of material fact.

■■ A paradox of the common law is that a contract

---

[2]In full, the body of Gehrig's letter recites:

> Due to the absence of a lease renewal for your space at 8427 South 208th Street, Building M of NWCP - Kent, and the expiration of your current lease as of September 30, 1995, the holdover provision of your lease[,] Paragraph 16[,] is in effect. Specifically[,] your base rent payment for the holdover period is 150% of your monthly base rent amount of $8,613 or $12,919.50. Your monthly Common Area Maintenance charge remains $1,941. Please adjust your payment to reflect your holdover status.

clause prohibiting oral modifications is essentially unenforceable because the clause itself is subject to oral modification. *See, e.g., Martinsville Nylon Employees Council Corp. v. NLRB*, 969 F.2d 1263, 1267 (D.C. Cir. 1992). The common-law rule has been lauded as allowing parties to quickly modify their contractual obligations when faced with unforeseen circumstances, *see Certified Corp. v. Hawaii Teamsters & Allied Workers*, 597 F.2d 1269, 1271 (9th Cir. 1979); *Martinsville*, 969 F.2d at 1270-72 (Wald, J., dissenting), and has been consistently followed in Washington, *see Kelly Springfield Tire Co. v. Faulkner*, 191 Wash. 549, 554-56, 71 P.2d 382 (1937) (citing *Ritchie v. State*, 39 Wash. 95, 81 P. 79 (1905)); *Consolidated Elec. Distribs., Inc. v. Gier*, 24 Wn. App. 671, 677-78, 602 P.2d 1206 (1979).

For example, in *Kelly* the issue was whether a guaranty could be orally modified despite a contractual prohibition of such modification. There the guarantor claimed that the respondent tire company orally agreed to release the guarantor from his obligations. The trial court precluded the presentation of such a defense, finding that it was barred by the written agreement, which required that "any variance be in writing [and] signed by specific officers . . . of the [tire] company." The Supreme Court reversed, stating that

[I]t is well settled that . . . a contract may be modified or abrogated by the parties thereto in any manner they choose, notwithstanding provisions therein prohibiting its modification or abrogation except in a particular manner.

*Kelly*, 191 Wash. at 556.

This court more recently addressed the issue in *Consolidated Electric*, which like *Kelly*, asked whether a guaranty could be orally modified despite a clause prohibiting such modification. The guarantor claimed that the creditor orally released the guaranty. The trial court stated that "it [was] clear that the contract could be abrogated by a subsequent oral agreement[,]" but refused to enforce such an agreement finding no consideration. Summary judgment was

then entered for the creditor. On appeal, this court found that the parties' mutual surrender of contract rights comprised adequate consideration. The summary judgment ruling was therefore reversed because the debtor's sworn testimony that the creditor waived the guaranty raised a question of material fact as to whether the guaranty was orally terminated. *Consolidated Elec.*, 24 Wn. App. at 672, 675, 677-78, 680-81.

Other jurisdictions also follow the common-law rule. For example, *Wahlder v. Tiger Stop, Inc.*, 391 So. 2d 535, 537-38 (La. Ct. App. 1980), *review denied*, 396 So. 2d 1351 (La. 1981) presents facts similar to those alleged by Pizza Blends. In that case, a commercial tenant leased a space with the option to extend the lease term on a yearly basis so long as two-months' written notice was provided. The corporate tenant neglected to provide the required written notice. The tenant's agent therefore telephoned the landlord and explained the situation. In their conversation, the parties agreed to extend the lease, and the tenant memorialized this agreement in two letters. Approximately two days later, however, the landlord attempted to rescind his earlier verbal agreement, instructing the tenant to vacate the premises. The tenant refused, and an eviction proceeding ensued. Despite a clause in the lease that prohibited oral modifications, the trial court found that the parties orally agreed to extend the lease. The appellate court upheld this finding, noting that the parties can orally agree to extend a lease despite such contradicting clauses. *Wahlder*, 391 So. 2d at 536-38, 538 n.3.

The above authorities notwithstanding, the common-law rule has its detractors. It has been criticized because it denies, to even the most sophisticated parties, the ability to restrict the manner in which their agreements can be modified. *See Martinsville*, 969 F.2d at 1267-68 (dicta, 2-1 vote). In apparent recognition of this, our Legislature has abrogated the common-law rule in limited circumstances, such as in contracts involving the sale and lease of goods. *See* RCW 62A.2-209(2); RCW 62A.2A-208(2). With respect

to leases, however, ineffective attempts at modification can still be considered as evidence of waiver. *See* RCW 62A.2-208(3)(4). Other legislatures have gone further. For example, New York and California have abrogated the common-law rule for all executory agreements. *See* NEW YORK GEN'L OBLIG. LAW § 15-301(1) (McKinney 1989); CAL. CIV. CODE § 1698 (West 1993). Normal defenses, such as estoppel, waiver, and novation, continue to apply, however, and to the extent the oral agreement has been executed, it remains enforceable under the doctrine of part performance. *See, e.g., Corson Corp. v. Frontier, Inc.*, 55 Wn.2d 652, 654-55, 349 P.2d 424 (1960); CAL. CIV. CODE § 1698.

■■ Our Legislature has not, however, abrogated the rule for all executory agreements. Nor has it abrogated the rule for contracts involving the commercial lease of real estate, and whether the rule should be abrogated in this context involves policy issues that are best resolved by the Legislature. In fact, the Legislature's willingness to dispose of the rule in only limited circumstances suggests the Legislature intended the rule to remain applicable in a case such as this. Thus, we are bound under *Kelly* to apply the common-law rule. There is no injustice in this application because the rule has been consistently enforced in this state throughout this century.

■ The question thus is whether Pizza Blends raised a question of material fact as to the lease's modification. All reasonable inferences must be resolved in Pizza Blends' favor. *See, e.g., Senate Republican Campaign Comm. v. Public Disclosure Comm'n*, 133 Wn.2d 229, 236-37, 943 P.2d 1358 (1997); CR 56(c).

■ Hoffman and Schuur testified that McAleer agreed to extend Pizza Blends' tenancy on a month-to-month basis at the normal rent rate. Schuur also testified that without this agreement Pizza Blends would have vacated at the end of the written-lease term. On summary judgment, this court must assume that Hoffman and Schuur's testimony is truthful. That being the case, a reasonable inference is that Schuur's letter documents that the parties agreed to a

continuing month-to-month tenancy that was not terminable without 30-days' notice. This inference, when considered in light of Schuur's testimony that McAleer received and agreed to the letter's terms, raises a question of fact as to whether the parties modified the lease. Whether there actually was a meeting of the minds for such a modification involves credibility determinations that cannot be made here.

■ Even if the lease could not have been orally modified, summary judgment was inappropriate because Pizza Blends raised a question of material fact as to whether Pacific was estopped from collecting the holdover rent. To prevail on an equitable estoppel theory, Pizza Blends must show that it reasonably relied on an admission, statement, or act of Pacific's that is inconsistent with the claim that holdover rent is now due. *See, e.g., Henderson Homes, Inc. v. Bothell*, 124 Wn.2d 240, 248-49, 877 P.2d 176 (1994).

Pizza Blends has raised a question of fact that it relied on McAleer's assurance that the holdover rent would not be assessed. Despite the contractual language prohibiting oral modifications, we cannot, as a matter of law, decree that this reliance is unreasonable. First, no-oral-modification clauses have consistently been deemed unenforceable in this state. Therefore, to hold that Pizza Blends' reliance was unreasonable merely because of the existence of the prohibition clause is to hold that a century of precedent is also unreasonable. Second, whether Pizza Blends was entitled to assume that McAleer's alleged promises were competently made in good faith cannot be determined on summary judgment.

Nor do we believe that Gehrig's letter requesting holdover rent renders Pizza Blends' reliance on McAleer's promises unreasonable as a matter of law. Schuur testified that he repeatedly attempted to contact Robertson to resolve the rent issue. Robertson does not refute Schuur's allegation that he left several voice mail messages before the two met to discuss the issue. There is no evidence that McAleer ever contacted Schuur after Schuur wrote the let-

ter outlining his understanding of the parties' agreement, and the letter from Gehrig does not acknowledge that Schuur's letter even exists. Thus, Schuur may have reasonably believed that his agreement with McAleer remained in effect, but that Gehrig and Robertson were unaware of the agreement because it had not been communicated to them.

Questions of fact precluded summary judgment here. We therefore reverse and remand for trial.

The remainder of this opinion has no precedential value and will be filed according to the rules of the court. *See* RCW 2.06.040; RAP 10.4(h).

BECKER, J., concurs.

Cox, J. (concurring) — I agree with the disposition of this matter. I write separately to focus on the question of the enforceability of clauses prohibiting oral modifications of leases.

In this case, we apply Washington's common law of contracts to a commercial lease of realty to determine that the lease provision prohibiting oral modifications is unenforceable.[3] While that is the correct result in this case, I caution that this application of a contract principle to a lease of realty should not signal indiscriminate application of all contract principles to leases of realty.

One widely-respected commentator notes that there are both historical and practical reasons for maintaining distinctions between the law of leases and that of contracts.[4] Moreover, the same commentator suggests that the enforceability of clauses prohibiting oral modification of leases of

---

[3]*Kelly Springfield Tire Co. v. Faulkner*, 191 Wash. 549, 71 P.2d 382 (1937) (oral modification of guaranty despite contractual provision prohibiting such modification); *Consolidated Elec. Distribs., Inc. v. Gier*, 24 Wn. App. 671, 602 P.2d 1206 (1979) (oral termination of guaranty).

[4]*See* MILTON R. FRIEDMAN, FRIEDMAN ON LEASES § 1.1 (4th ed. 1997).

realty may require legislation, such as that in the state of New York.[5]

This court has recently recognized that there continue to be limitations to the application of principles of contract to the law of leases. In *Johnson v. Yousoofian*,[6] we observed that our Supreme Court has not retreated from its historical refusal to recognize an implied covenant of good faith where a landlord refuses to consent to assignment of a lease of realty where the lease is silent on the standard to be applied in making the decision. There are undoubtedly other examples where the law of contracts should not be applied to leases of real property.

It is sufficient to conclude that in this case the application of the contractual principle reaches the proper result. Any modification of the law respecting enforceability of clauses prohibiting oral modification of leases should be left to the Legislature.

---

[5]FRIEDMAN, at § 32.1.

[6]*Johnson v. Yousoofian*, 84 Wn. App. 755, 760-62, 930 P.2d 921 (1996) (citing *Alwen v. Tramontin*, 131 Wash. 78, 228 P. 851, 40 A.L.R. 551 (1924)), *review denied*, 132 Wn.2d 1006 (1997); *Coulos v. Desimone*, 34 Wn.2d 87, 208 P.2d 105 (1949); and *Ernst Home Ctr., Inc. v. Sato*, 80 Wn. App. 473, 476, 910 P.2d 486 (1996)).